EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Edwin Cruz Cruz; María López Rivera<br><br>Recurridos<br><br>v.<br><br>Casa Bella Corp.; Cooperativa de Ahorro y Crédito de Arecibo y otros<br><br>Peticionarios | Certiorari<br><br>2024 TSPR 47<br><br>213 DPR ___ |

Número del Caso: CC-2023-0267

Fecha: 8 de mayo de 2024

Tribunal de Apelaciones:

Panel Especial

Representantes legales de la parte peticionaria:

Lcdo. Carlo Murati Toledo
Lcdo. Reinaldo I. Maldonado-Vélez
Lcda. Yamaris Merced González

Representantes legales de la parte recurrida:

Lcda. Rhonda M. Castillo Gammill
Lcdo. Carlos E. Cardona Fernández

Materia: Obligaciones y Contratos – Si un contrato de construcción y relevo de responsabilidad suscrito entre un contratista y el dueño de la obra es vinculante para un tercero que se limitó a financiar el proyecto, y si el tercero incumplió con el contrato de préstamo de construcción que formalizó con el dueño de la obra, al desembolsar los fondos del préstamo que otorgó por un contrato del cual no formó parte.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Edwin Cruz Cruz; María López Rivera<br><br>Recurridos<br><br>v.<br><br>Casa Bella Corp.; Cooperativa de Ahorro y Crédito de Arecibo y otros<br><br>Peticionarios | CC-2023-267 | *Certiorari* |

El Juez Asociado Señor Feliberti Cintrón emitió la Opinión del Tribunal.

En San Juan, Puerto Rico, a 8 de mayo de 2024.

El presente caso nos brinda la oportunidad de determinar si el Tribunal de Apelaciones erró al revocar una sentencia parcial emitida por el Tribunal de Primera Instancia, en la que se declaró ha lugar una solicitud de sentencia sumaria presentada por la Cooperativa de Ahorro y Crédito de Arecibo (COOPACA o peticionaria) y se decretó el cierre y archivo, con perjuicio, de las reclamaciones instadas por el Sr. Edwin Cruz Cruz y la Sra. María López Rivera (en conjunto, los recurridos) en contra de la peticionaria.

Específicamente, debemos analizar: (1) si un contrato de construcción y relevo de responsabilidad suscrito entre un contratista y el dueño de la obra es vinculante para un tercero que se limitó a financiar el proyecto, y (2) si ese tercero incumplió con el contrato de préstamo de

construcción que formalizó con el dueño de la obra, al desembolsar los fondos del préstamo que otorgó según las estipulaciones de un acuerdo ajeno a éste, es decir, según las cláusulas de un contrato del cual no formó parte.

Adelantamos que contestamos la primera interrogante en la negativa. **No obstante, aclaramos que el hecho de que el contrato de construcción y relevo de responsabilidad no sea vinculante para la institución financiera en cuanto a las obligaciones que allí se establecieron, no impide que esta última pueda beneficiarse de las estipulaciones a su favor.** Por otro lado, respondemos el segundo cuestionamiento en la afirmativa. Veamos.

I

El 28 de mayo de 2013, los recurridos y Casa Bella, Corp. (Casa Bella) otorgaron un *Contrato de construcción* para la edificación de una propiedad residencial en un solar localizado en el Barrio Sumidero de Aguas Buenas.[1] Más adelante, el 27 de noviembre de 2013, formalizaron un segundo *Contrato de construcción [y] relevo de responsabilidad* (contrato de construcción y relevo de responsabilidad), el cual tendría validez una vez firmado el préstamo hipotecario con COOPACA.[2] La peticionaria y los recurridos suscribieron en la misma fecha un *Contrato*

---

[1] *Contrato de construcción*, Apéndice del *certiorari*, págs. 421-426.

[2] *Contrato de construcción [y] relevo de responsabilidad*, Apéndice del *certiorari*, págs. 446-449.

*de préstamo de construcción* (contrato de préstamo) por $112,200.[3]

El 16 de junio de 2015, los recurridos presentaron una *Demanda* sobre vicios de construcción, errores de diseño que constituyen ruina, fraude, materiales defectuosos, autorización indebida de permisos, incumplimiento de contrato, y daños y perjuicios[4] en contra de varios codemandados, entre los que se encuentra COOPACA. En lo atinente a la peticionaria, alegaron que incumplió el contrato de préstamo al no desembolsar los fondos para construir el proyecto conforme a los acuerdos estipulados. También, indicaron que COOPACA realizó pagos de hasta el noventa por ciento (90%) del préstamo sin contar con su autorización; sin que las etapas de la construcción estuvieran realmente terminadas; a base de certificaciones indebidas del ingeniero, y a pesar de que lo construido era una ruina. En consecuencia, solicitaron, entre otros remedios, que el foro primario encontrara tanto a la peticionaria como al restante de los codemandados solidariamente responsables por los presuntos daños y perjuicios sufridos.

El 18 de agosto de 2015, COOPACA presentó su alegación responsiva. Básicamente, negó las imputaciones en su

---

[3]  *Contrato de préstamo de construcción* (contrato de préstamo), Apéndice del *certiorari*, págs. 427-445. Véanse, además, las alegaciones 82 y 84 de la *Demanda*, Apéndice del *certiorari*, pág. 96.

[4]  La demanda original fue enmendada en varias ocasiones para, entre otras cosas, sustituir partes desconocidas o incluir codemandados.

contra y expuso que los desembolsos se hicieron mediante cheques a nombre de Casa Bella y el señor Cruz Cruz, por lo que no era posible negociar los mismos sin el endoso o firma de ambos. Añadió que los recurridos no le informaron oportunamente los problemas de construcción, pero una vez lo hicieron, no realizó pagos adicionales, quedando pendiente el desembolso de la cuarta y última etapa. La peticionaria también alegó que los cheques se generaron una vez Casa Bella certificó los trabajos realizados y un ingeniero de la compañía D'Best Engineering Services, contratada por ésta, verificó que los mismos fueron completados. Finalmente, COOPACA adujo que no respondía por los presuntos vicios de construcción debido a que los recurridos y Casa Bella habían firmado un relevo de responsabilidad a su favor y, además, sólo había financiado la obra.

Como parte del descubrimiento de prueba, el 29 de enero de 2016, los recurridos cursaron a la peticionaria un *Primer pliego de interrogatorio, requerimiento de admisiones y producción de documentos*. Transcurrido el término sin que COOPACA respondiera u objetara el requerimiento de admisiones, los recurridos solicitaron que el Tribunal de Primera Instancia lo diera por admitido. Cónsono con lo anterior, el foro primario emitió una *Orden* en la que le concedió a la peticionaria un término adicional para contestar el descubrimiento de prueba, el cual incumplió. El 17 de agosto de 2016, el Tribunal de

Primera Instancia declaró ha lugar la solicitud de los recurridos y dio por admitido el requerimiento.[5] Luego de varios incidentes procesales, el 31 de octubre de 2019, COOPACA presentó una solicitud de sentencia sumaria. En

---

[5] En particular, el Tribunal de Primera Instancia dio por admitidas las aseveraciones siguientes:

> (1) COOPACA concedió a los [d]emandantes una línea de crédito no revolvente de [$112,200].
>
> (2) El [c]ontrato de [p]réstamo de [c]onstrucción de COOPACA con los demandantes establece que COOPACA haría desembolsos de la línea de crédito no revolvente "a solicitud de la [parte deudora]".
>
> (3) El [c]ontrato de [p]réstamo de [c]onstrucción de COOPACA con los demandantes establece que COOPACA haría desembolsos de la línea de crédito no revolvente "a base del cien por ciento (100%) del costo de construcción de obras, trabajos y etapas realmente terminadas".
>
> (4) El [c]ontrato de [p]réstamo de [c]onstrucción de COOPACA con los demandantes establece que COOPACA utilizaría [un] ingeniero reconocido[,] aceptable y aprobado por COOPACA para certificar [] la "base del cien por ciento (100%) del costo de construcción de obras, trabajos y etapas realmente terminadas".
>
> (5) COOPACA seleccionó y aprobó al Ing. Emilio Díaz Colón a través de D'Best Engineering Services, Inc., como el ingeniero reconocido y aceptable al que hace referencia la sección Segunda B del [c]ontrato de [p]réstamo de [] [c]onstrucción.
>
> (6) El [c]ontrato de [p]réstamo de [c]onstrucción establece[,] que los adelantos de la línea de crédito se efectuaran mediante una solicitud escrita por la [p]arte [d]eudora a COOPACA desglosando el propósito de cada partida que forma parte de la cantidad solicitada.
>
> (7) COOPACA hizo desembolsos del [c]ontrato de [p]réstamo de [c]onstrucción sin recibir [una] solicitud escrita solicitando el desembolso[,] suscrita por los demandantes[,] [y] desglosando el propósito de cada partida que formaba parte de la cantidad solicitada.
>
> (8) El gasto del inspector reconocido y aprobado por COOPACA para certificar las etapas realmente terminadas fue incluido como parte de los gastos del préstamo que le hiciera COOPACA a la parte demandante.

*Sentencia parcial* emitida por el Tribunal de Primera Instancia, Apéndice del *certiorari*, págs. 528-564. Véase, además, *Moción solicitando se de[] por admitid[o] el requerimiento de admisiones conforme orden de 8 de marzo de 2016*, Apéndice del *certiorari*, págs. 521-527.

resumen, alegó la inexistencia de hechos materiales en controversia, así como su cumplimiento con las obligaciones contractuales contraídas. Reafirmó que su obligación contractual era exclusivamente financiera y no en cuanto a la calidad de los trabajos realizados por Casa Bella.

El 15 de julio de 2020, los recurridos presentaron una moción en oposición a la solicitud de sentencia sumaria. En lo pertinente, indicaron que la peticionaria había aceptado su incumplimiento con el contrato de préstamo al no contestar un requerimiento de admisiones que éstos le cursaron y que el foro primario dio por admitido. Añadieron que el argumento de COOPACA sobre el supuesto relevo de responsabilidad a su favor era erróneo debido a que no había comparecido como parte en el contrato de construcción y relevo de responsabilidad firmado entre éstos y Casa Bella. Así las cosas, los recurridos arguyeron que procedía rechazar de plano la solicitud de sentencia sumaria y adjudicar la extensión de los daños ocasionados por el incumplimiento contractual.

El 22 de junio de 2022, el Tribunal de Primera Instancia emitió una *Sentencia Parcial* en la que decretó el cierre y archivo, con perjuicio, de las reclamaciones instadas en contra de la peticionaria. En cuanto a las admisiones tácitas, el foro primario indicó que COOPACA pagó una sanción monetaria al incumplir con su deber de contestar el requerimiento de admisiones e interrogatorios. Añadió que el efecto de las admisiones tácitas se limitaba a

impedir que se presentara prueba contraria a tales admisiones. No obstante, aclaró que lo anterior no impedía que éste pudiera considerar aquellos hechos probados que obraban en el expediente del caso, por lo que proveyó no ha lugar a la oposición de los recurridos ante la solicitud de sentencia sumaria.

El Tribunal de Primera Instancia razonó, además, que las funciones y gestiones de la peticionaria se limitaron a aquellas normalmente financieras. Así, expuso que el contrato de construcción y relevo de responsabilidad entre los recurridos y Casa Bella contiene una cláusula en beneficio de tercero, la cual exime a COOPACA de responsabilidad. El foro primario planteó que, a pesar de que la peticionaria no formó parte del aludido contrato, puede exigir como tercero beneficiado el cumplimiento de la cláusula de relevo a su favor. De este modo, aclaró que no se extienden a COOPACA las reclamaciones de los recurridos en torno a los supuestos defectos o vicios de construcción, por lo que descartó la aplicación de la acción decenal, cuantiminosa o redhibitoria en contra de la peticionaria.

Con el propósito de disponer sobre el presunto incumplimiento contractual de COOPACA, el Tribunal de Primera Instancia evaluó el contrato de préstamo otorgado entre ésta y los recurridos, así como el contrato de construcción y relevo de responsabilidad formalizado entre los recurridos y Casa Bella. En cuanto a este último

contrato, el foro primario intimó que, a pesar de que la peticionaria no compareció en el mismo, debía considerarlo para atender las controversias entre las partes debido a que éste contenía pactos y condiciones que incidían directamente en las funciones asumidas por COOPACA en el contrato de préstamo. Así pues, evaluados los contratos, el Tribunal de Primera Instancia concluyó que los mismos eran claros y específicos, por lo que debían entenderse en su sentido literal.

El foro primario expuso que la obligación principal de la peticionaria era proveer el financiamiento para la construcción del inmueble, mientras que la obligación de los recurridos era el repago de la deuda más los intereses acordados. De este modo, dispuso que las referidas obligaciones constituían los elementos esenciales, sin los cuales el consentimiento de COOPACA y los recurridos no se hubiese logrado. Así pues, determinó que el planteamiento de los recurridos respecto al incumplimiento de la peticionaria con su obligación de desembolsar el dinero del préstamo, a solicitud de éstos, era improcedente.

El Tribunal de Primera Instancia infirió que el mero otorgamiento del contrato debía entenderse como una autorización suficiente para realizar los pagos, pues éstos eran necesarios para la construcción y el progreso de la obra. Por tanto, dispuso que el inciso B de la Segunda cláusula del contrato de préstamo (alusivo al desembolso de los fondos "a solicitud de la parte deudora") no podía

entenderse como que no se efectuarían los pagos sin la solicitud de los recurridos. Concluyó esto al considerar que no fue sino hasta finales de la construcción, y cerca de la fecha de vencimiento del contrato de construcción y relevo de responsabilidad, que los recurridos acudieron a COOPACA para indagar sobre los desembolsos realizados. A juicio del foro primario, resultaba irrazonable que Casa Bella continuara construyendo sin recibir pago alguno.

Por otra parte, expuso que en la industria de la construcción es uso y costumbre que los cheques de financiamiento se expidan a nombre del contratista y del dueño de la obra, lo que requiere necesariamente el consentimiento de ambas partes para hacerlos efectivos. El Tribunal de Primera Instancia determinó que, en ausencia de provisión contractual que dispusiera lo contrario, resultaba inmaterial si los cheques expedidos por la peticionaria se le entregaban a Casa Bella o a los recurridos, siempre que los mismos se hubiesen generado a nombre de ambos. Así, resolvió que los reclamos en contra de COOPACA eran inmeritorios, pues ésta había cumplido con su obligación contractual principal de desembolsar los fondos una vez las etapas de la construcción fueran terminadas y certificadas. En cuanto a cómo se negociaron los cheques emitidos por la peticionaria, el foro primario determinó que no era un asunto sobre el cual la institución financiera tuviera injerencia o responsabilidad.

En desacuerdo con el dictamen, el 5 de agosto de 2022, los recurridos presentaron una *Moción para solicitar reconsideración y determinaciones de hechos adicionales*. Examinada la solicitud, el tribunal la declaró sin lugar mediante una *Resolución* emitida el 15 de agosto de 2022 y notificada el 6 de septiembre de 2022.

Inconformes con dicha determinación, el 6 de octubre de 2022, los recurridos acudieron al foro apelativo intermedio mediante un recurso de apelación. COOPACA, por su parte, presentó oportunamente su oposición a la apelación.

El 27 de marzo de 2023, el Tribunal de Apelaciones emitió una *Sentencia* en la que revocó la determinación del foro primario. En su evaluación *de novo*, el foro apelativo intermedio acogió todas las determinaciones de hechos incontrovertidos del Tribunal de Primera Instancia en su *Sentencia Parcial*. Luego de analizar el contrato de préstamo y el contrato de construcción y relevo de responsabilidad, el Tribunal de Apelaciones concluyó que, a la luz del derecho vigente, se cometieron los errores señalados por los recurridos. Asimismo, dispuso que ambos contratos constituían la ley entre las partes que los suscribieron únicamente. A tales efectos, el foro apelativo intermedio expuso que lo procedente en derecho era analizar las disposiciones del contrato de préstamo, pues fue allí donde COOPACA y los recurridos se obligaron mutuamente.

A luz de lo anterior, el Tribunal de Apelaciones determinó que, a pesar de que el contrato de préstamo suscrito entre los recurridos y la peticionaria era claro, el foro primario recurrió al contrato de construcción y relevo de responsabilidad (del cual COOPACA no fue parte) para resolver la controversia. El foro apelativo intermedio entendió que el Tribunal de Primera Instancia consideró los términos y condiciones de un contrato ajeno a la peticionaria para llegar a su conclusión. Añadió que, según el contrato de préstamo, la obligación de COOPACA era desembolsar el dinero del proyecto por etapas realmente terminadas y certificadas por un ingeniero aceptable a ésta y tras una solicitud escrita de los recurridos. Asimismo, añadió que los desembolsos debían efectuarse mediante créditos a una cuenta de depósito que los recurridos mantendrían con la peticionaria para tales fines.

El Tribunal de Apelaciones determinó que el foro primario no podía utilizar elementos extrínsecos a la relación contractual entre COOPACA y los recurridos para restarle validez al contrato de préstamo, cuya claridad no estaba en controversia. Así las cosas, dispuso que la peticionaria incumplió con su obligación de desembolsar los fondos del proyecto según dispuesto en el contrato de préstamo. El foro apelativo intermedio explicó que Casa Bella no suscribió el contrato de préstamo ni COOPACA el contrato de construcción y relevo de responsabilidad, por lo que esta última no tenía la obligación de emitir los

desembolsos a nombre de Casa Bella. Dijo esto a pesar de que el contrato de construcción y relevo de responsabilidad disponía para ello.

En vista de lo anterior, el Tribunal de Apelaciones concluyó que, como consecuencia del incumplimiento contractual de la peticionaria, procedía que el Tribunal de Primera Instancia celebrara una vista evidenciaria para determinar la existencia o no de los presuntos daños y perjuicios sufridos por los recurridos.

En desacuerdo con la determinación del foro apelativo intermedio, el 27 de abril de 2023, COOPACA presentó el recurso de *certiorari* que nos ocupa, en el que formuló los errores siguientes:

> (1) Erró el T[ribunal de Apelaciones] al ignorar y descartar el texto claro del contrato de construcción [y relevo de] responsabilidad en conjunto con el contrato de préstamo [] y el contrato de construcción los cuales son vinculantes a la parte recurrida y a COOPACA.

> (2) Erró el T[ribunal de Apelaciones] al concluir que el único contrato que gobernaba la relación contractual entre COOPACA y Edwin Cruz Cruz era el contrato de préstamo.

> (3) Erró el T[ribunal de Apelaciones] al no aplicar el derecho pertinente a los hechos incontrovertidos debidamente establecidos por el T[ribunal de Primera Instancia] en su sentencia sumaria parcial y avalados por el propio T[ribunal de] A[pelaciones].

> (4) Erró el T[ribunal de Apelaciones] al concluir que COOPACA es responsable en daños y perjuicios hacia Edwin Cruz Cruz y María López Rivera cuando existe una cláusula explícita que los exime de todo alegado daño sufrido por presuntos vicios de construcción.

Contando con el beneficio de la comparecencia de ambas partes, y habiéndose expedido ya el recurso de *certiorari* presentado, resolvemos las controversias planteadas.[6]

## II

### A. La sentencia sumaria y la revisión judicial

En nuestro ordenamiento, la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, regula todo lo concerniente al mecanismo de sentencia sumaria. Aponte Valentín *et al.* v. Pfizer Pharm., 208 DPR 263, 277 (2021). Esta regla procesal permite disponer de manera ágil de los casos en los que no estén presentes hechos materiales en controversia que requieran la celebración de un juicio. Íd. Por esta razón, resulta esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso. Íd.; Zambrana García v. ELA *et al.*, 204 DPR 328, 341-342 (2020).

Cuando hablamos de hechos materiales, nos referimos a aquellos que pueden alterar la forma en que se resuelve una reclamación, de acuerdo con el derecho sustantivo aplicable. Íd., pág. 341. De este modo, de no haber

---

[6]   Valga señalar que, previo a que el recurso de *certiorari* quedara perfeccionado, las partes presentaron varias mociones de las cuales disponemos. En cuanto a la *Moción para desestimar por no haberse formalizado o perfeccionado el recurso* presentada el 26 de septiembre de 2023 por el Sr. Edwin Cruz Cruz y la Sra. María López Rivera (en conjunto, los recurridos), se provee no ha lugar. Con respecto a la *Moción en cumplimiento de orden, para mostrar causa y en oposición a desestimación* presentada el 5 de octubre de 2023 por la Cooperativa de Ahorro y Crédito de Arecibo (COOPACA o peticionaria), se declara ha lugar.

hechos materiales en controversia, el tribunal dictará sentencia sumaria siempre que proceda en derecho. Aponte Valentín *et al*. v. Pfizer Pharm., *supra*, pág. 278; Rivera Matos *et al*. v. Triple-S *et al*., 204 DPR 1010-1024 (2020).

Por otro lado, hemos manifestado que no es aconsejable dictar sentencia sumaria en casos donde existe controversia sobre asuntos de credibilidad o que envuelvan aspectos subjetivos, como la intención, los propósitos mentales o la negligencia. Aponte Valentín *et al*. v. Pfizer Pharm., *supra*, pág. 278. Empero, nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge la inexistencia de controversia en torno a los hechos materiales. Íd.

En cuanto al alcance de la revisión judicial, hemos expresado reiteradamente que los tribunales apelativos nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. Birriel Colón v. Econo y otros, 2023 TSPR 120, 213 DPR ___ (2023); Rivera Matos *et al*. v. Triple-S *et al.*, *supra,* pág. 1025. No obstante, en nuestra revisión estamos limitados a: (1) considerar los documentos que se presentaron ante el foro primario; (2) determinar si existe o no controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó correctamente. Birriel Colón v. Econo y otros, *supra*. Así pues, la

revisión de los foros apelativos conlleva examinar *de novo* el expediente del caso de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro primario. Íd.

**B. La teoría general de las obligaciones y los contratos**

Es principio reconocido que el Código Civil de 1930 (Código Civil), aplicable a los hechos de este caso, establece que las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en los que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992. Las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, por lo que deben cumplirse según se hayan delimitado por éstas. Art. 1044 del Código Civil, 31 LPRA ant. sec. 2994. Cónsono con ello, es harto conocido que no puede dejarse al arbitrio de uno de los contratantes ni la validez ni el cumplimiento de las obligaciones contractuales. Art. 1208 del Código Civil, 31 LPRA ant. sec. 3373.

Se entiende que un contrato existe desde que una o varias personas se obligan a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371. Para que el contrato tenga eficacia debe concurrir el consentimiento de los contratantes, un objeto cierto y una causa de la obligación que se establezca. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. Así, siempre que concurran las condiciones esenciales para su

validez, los contratos son obligatorios. Art. 1230 del Código Civil, 31 LPRA ant. sec. 3451. Es por esta razón que no sólo se obligan al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375.

Nuestro ordenamiento concede amplia libertad de acción a los particulares que desean obligarse. VDE Corporation v. F & R Contractors, 180 DPR 21, 33 (2010); De Jesús González v. A.C., 148 DPR 255, 263 (1999). Este principio se conoce como la autonomía de la voluntad, y significa que las partes contratantes pueden establecer todos los pactos, cláusulas y condiciones que entiendan convenientes, siempre que los mismos no sean contrarios a las leyes, la moral o el orden público. Art. 1207 del Código Civil, 31 LPRA ant. sec. 3372. Consecuentemente, cuando los términos de un contrato son claros y no dejan dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación, por lo que se está al sentido literal de las cláusulas pactadas. Art. 1233 del Código Civil, 31 LPRA ant. sec. 3471. Es decir, se debe seguir y respetar la letra clara del contrato cuando la misma refleja inequívocamente la voluntad de las partes. S.L.G. Irizarry v. S.L.G. García, 155 DPR 713, 726 (2001).

No empece lo anterior, en ocasiones no es posible determinar la voluntad de las partes con la mera lectura

literal de las cláusulas contractuales. Íd. Cuando esto ocurre, es necesario juzgar la intención de los contratantes a la luz de los actos anteriores, coetáneos y posteriores al contrato, así como las circunstancias indicativas de la voluntad de las partes. Negrón Vélez v. ACT, 196 DPR 489, 506-507 (2016); Blás v. Hospital Guadalupe, 167 DPR 439, 451 (2006).

**C. Los contratos con estipulaciones a favor de un tercero**

Según lo hemos expresado, los contratos sólo tienen efecto entre quienes los otorgan y sus herederos. Art. 1209 del Código Civil, 31 LPRA ant. sec. 3374. Este principio rector cede respecto a los herederos si los derechos u obligaciones que surgen del contrato no son transmisibles, o por su naturaleza, o por pacto, o por disposición de ley. Íd. Esto quiere decir que la obligatoriedad de los contratos se manifiesta mediante la vinculación de las partes que le dieron vida. J.R. Vélez Torres, *Curso de derecho civil, Derecho de Contratos*, San Juan, Ed. Revista Jurídica de la Universidad Interamericana, 1990, T. IV, Vol. II, pág. 115. Por tanto, para las personas ajenas al vínculo contractual, éste nada importa, pues nada tuvieron que ver con su creación. Íd.

Ahora bien, nuestro ordenamiento permite que los contratos que se otorguen tengan estipulaciones a favor de un tercero. Sobre este particular, el Art. 1209 del Código Civil, *supra*, establece que, si el contrato tiene alguna estipulación a favor de un tercero, éste podrá

exigir su cumplimiento siempre que haga saber su aceptación al obligado antes de que haya sido revocada. Véase, también, Bco. Central Corp. v. Yauco Homes, Inc., 135 DPR 858, 863 (1994).

El contrato con estipulación a favor de un tercero es aquel "celebrado entre el promitente—obligado por la disposición— y el estipulante, quienes otorgan alguna ventaja al tercero beneficiario con el efecto de convertirlo en acreedor directo del obligado en cuanto a la prestación prometida". Íd., págs. 863-864. Así pues, "la intención de los contratantes es conceder al beneficiario el derecho a reclamar judicialmente el cumplimiento de lo establecido". Íd., pág. 864. Es decir, "[l]os contratos a favor de tercero son únicamente aquellos que las partes celebran para atribuir de manera directa o indirecta un derecho a un tercero, que, sin embargo, no ha tenido participación ni directa ni indirecta en la celebración del negocio y que no queda por consiguiente obligado ni vinculado por él". Íd., pág. 864 (citando a L. Diez-Picazo, *Fundamentos del derecho civil patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. 1, pág. 269).

Nótese que no es necesario que el tercero acepte para adquirir el derecho estipulado a su favor, pues esto ocurre antes de la aceptación. Bco. Central Corp. v. Yauco Homes, Inc., *supra*, pág. 865. Empero, la aceptación es pertinente en cuanto impide posteriormente la revocación de la

estipulación a su favor. <u>Íd.</u> La referida aceptación "puede ser expresa o tácita, por palabras o por hechos". <u>Íd.</u> (citando a Q.M. Scaevola, *Código Civil Comentado,* 2da ed., Madrid, Ed. Reus, 1958, T. XX, pág. 630). Además, para que se complete la aceptación, es necesario poner en conocimiento de ella al obligado y notificar también al estipulante, pues es quien tiene la facultad de revocar la estipulación y quien se ve afectado por el acto de aceptación. <u>Bco. Central Corp. v. Yauco Homes, Inc.</u>, *supra*.

Ahora bien, ¿quién es el tercero? A pesar de que el Art. 1209 del Código Civil, *supra*, no define el término "tercero", se entiende que se refiere a aquella persona que no formó parte del negocio jurídico. M.E. García Cárdenas, *Derecho de obligaciones y contratos*, Puerto Rico, Ed. MJ Editores, 2012, pág. 463. Así, para que se considere un contrato a favor de un tercero, no es necesario que el mismo se refiera en su totalidad a estipulaciones en provecho de éste. Vélez Torres, *op. cit.*, pág. 117. Basta con que una sola estipulación o disposición de las varias que pueda contener el convenio sea a favor del tercero. <u>Íd.</u>

## D. **El incumplimiento de las obligaciones contractuales y los daños**

El Art. 1054 del Código Civil, 31 LPRA ant. sec. 3018, sujeta a aquellos que contravienen sus obligaciones (ya sea por haber incurrido en dolo, negligencia o morosidad) a la indemnización por los daños y perjuicios causados. A

la luz de este precepto, "todo incumplimiento contractual dará lugar a un resarcimiento". Álvarez v. Rivera, 165 DPR 1, 18 (2005).

La acción en daños por incumplimiento contractual (acción *ex contractu*) se basa "en el quebrantamiento de un deber que surge de un contrato expreso o implícito". Íd. Véase, además, Rivera Sanfeliz *et al*. v. Jta. Dir. FirstBank, 193 DPR 38, 56 (2015) (citando a Soc. de Gananciales v. Vélez & Asoc., 145 DPR 508, 521 (1998)). Así pues, por virtud de la acción *ex contractu* se resarcen los daños que se ocasionan ante el incumplimiento de las obligaciones previamente acordadas. Rivera Sanfeliz *et al*. v. Jta. Dir. FirstBank, *supra*, pág. 56. Hemos reiterado que estas reclamaciones tienen por objeto que las partes cumplan las promesas contractuales sobre las cuales prestaron su consentimiento. Maderas Tratadas v. Sun Alliance *et al*., 185 DPR 880, 909 (2012). Es decir, para que proceda la acción *ex contractu* tiene que haber existido "un acuerdo de voluntades que genere una obligación, situación o estado de derecho resultante de un convenio y que haya creado unas expectativas a base de las cuales actuaron las partes". Álvarez v. Rivera, *supra*, pág. 18.

Ahora bien, ¿cómo responde quien incumple su obligación contractual? Sobre este particular, la profesora Margarita García Cárdenas plantea que los criterios que se deben evaluar para catalogar el incumplimiento contractual como

doloso o negligente dependen de si se debió a una actuación perezosa e indolente del deudor o si fue el resultado de una actuación reactiva de éste. García Cárdenas, *op. cit.*, págs. 317-318. A pesar de que tanto en el dolo como en la negligencia resulta necesario que exista un nexo causal entre el incumplimiento y el daño reclamado (el cual tiene que probarse), en el incumplimiento negligente sólo se responde por los daños y perjuicios previsibles al momento de la contratación de las partes. Íd., pág. 318. Mientras que en el caso del incumplimiento doloso se responde por todo daño causado, aún el imprevisible. Íd.

## III

Por estar relacionados entre sí, analizaremos el primer, segundo y tercer señalamiento de error de manera conjunta. Luego, discutiremos el cuarto error, cuyos méritos atenderemos por separado.

La contención de la peticionaria en los primeros tres (3) señalamientos de error gira en torno a que el Tribunal de Apelaciones ignoró el lenguaje claro de los contratos suscritos por los recurridos y Casa Bella, los cuales, a juicio de COOPACA, son vinculantes a ésta junto al contrato de préstamo otorgado entre los recurridos y la referida institución financiera. La peticionaria entiende que el foro apelativo intermedio erró al concluir que el único contrato que gobernaba la relación contractual entre ésta y los recurridos era el contrato de préstamo, y al no aplicar el derecho pertinente a los hechos incontrovertidos

establecidos por el Tribunal de Primera Instancia en su *Sentencia Parcial*. No le asiste la razón.

El 28 de mayo de 2013, **los recurridos y Casa Bella** suscribieron un primer *Contrato de construcción*. Más adelante, **el 27 de noviembre de 2013, las mismas partes** otorgaron un segundo contrato de construcción y relevo de responsabilidad. **Resulta material destacar el hecho de que en ninguno de los acuerdos COOPACA compareció como parte contratante.** No empece a ello, en el contrato de construcción y relevo de responsabilidad, los recurridos y Casa Bella **le impusieron obligaciones a la peticionaria en torno al proceso que debía seguir para desembolsar los fondos del préstamo.** Además de estas cláusulas, estipularon otras en las que aceptaron, individualmente, que la única intervención de COOPACA fue financiar el proyecto y emitir pagos parciales luego de certificada y aprobada cada etapa de la construcción. Consecuentemente, **los recurridos relevaron de responsabilidad a la peticionaria por cualquier incumplimiento de Casa Bella y por cualquier defecto o vicio de construcción,** entre otros.[7]

---

[7] En lo pertinente, véanse las cláusulas contractuales pactadas por Casa Bella, Corp. (Casa Bella) y los recurridos el 27 de noviembre de 2013 mediante el contrato de construcción y relevo de responsabilidad:

---------------------**CLÁUSULAS**----------------------

. . . . . . .

---**Cuarto:** Que del préstamo obtenido [de COOPACA] el [contratante] le pagará al [contratista], según éste haya concluido, cada etapa asignándose para cada etapa las siguientes cantidades:-------------------------------

| | | |
|---|---|---|
| PRIMERA ETAPA: | 38% | $34,678.11 |
| SEGUNDA ETAPA: | 34% | $31,023.22 |
| TERCERA ETAPA: | 20% | $18,116.72 |
| CUARTA ETAPA: | 8% | $7,374.00 |
| **TOTAL** | **100%** | **$91,192.05** |

---El pago de las etapas serán expedidos por [COOPACA] a nombre del contratante y contratista, disponiéndose[,] además[,] que el pago de los materiales de construcción será realizado por [COOPACA] a nombre de la ferretería haciendo referencia al contratante.--------------------

---**Cinco**: Conforme antes mencionado, en el día de hoy y por el presente documento el [contratante] nombra al [contratista][,] acepta a [COOPACA] como entidad depositaria de los fondos que el [contratante] ha obtenido de [COOPACA] para que los custodie y efectúe pagos parciales mediante cheque[s] que se harán siempre a la orden del [contratante] y el [contratista], según se hayan concluido y aprobado las etapas construidas por el [contratista]. [COOPACA] efectuará los pagos parciales mediante cheques endosados por el [contratante], quien al endosar cada cheque acepta y le representa a [COOPACA] que la etapa ha sido debidamente terminada.-------------------------------------------

. . . . . . . .

---**Nueve**: El [contratista] acepta, admite y manifiesta que **las únicas funciones de [COOPACA] ha sido financiar la obra a construir ejerciendo las funciones normales de una institución financiera y de ninguna manera ha promovido ni participado en la construcción de la obra**.-

---**Diez**: El [contratante] acepta, admite y manifiesta que **la única función de [COOPACA] será** efectuar los pagos parciales al [contratista] y al [contratante] luego de certificada y aprobada cada etapa, retenido el diez por ciento (10%) de cada etapa, y pagar los materiales de construcción para cada etapa a la ferretería escogid[a] por el contratante, cuyo cheque expedido tendrá como referencia al nombre de la parte contratante.----------

. . . . . . .

---**SEXTO:** Que el [contratante] habiendo entendido y manifestado lo indicado en las cláusulas Nueve (9) y Diez (10), **acuerda expresamente relevar de responsabilidad en forma tal, absoluta e irrevocable a [COOPACA] por cualquier incumplimiento de parte del [contratista] que edificará la obra y por cualquier defecto o vicio de construcción, daños y perjuicios a terceras personas, así como cualquier otra causa de todo tipo** de la misma forma releva a cualquier tenedor posterior del pagaré hipotecario suscrito en el día de hoy.----------------

---**SÉPTIMO:** Se aclara que este contrato será válido una vez se firme parte del préstamo hipotecario con [COOPACA]. De no firmarse el préstamo hipotecario en la misma fecha de firma de este contrato, el mismo quedará sin validez alguna.--------------------------------

(Negrilla suplida).

El **27 de noviembre de 2013, COOPACA y los recurridos** también suscribieron un contrato de préstamo por $112,200 para financiar la construcción del inmueble. Entre las cláusulas y condiciones del referido convenio, las partes establecieron, **específicamente**, la forma en que la peticionaria realizaría los desembolsos del préstamo. Así pues, estipularon que COOPACA **(previa solicitud de los recurridos por escrito) haría los desembolsos a una cuenta de depósito que los recurridos mantendrían en dicha institución financiera para esos propósitos.** De la misma forma, acordaron que **ninguna enmienda, modificación, terminación, renuncia o tolerancia de cualquiera de las disposiciones del contrato de préstamo tendría validez legal alguna, salvo que constara en un escrito debidamente suscrito por un oficial autorizado por la peticionaria.**[8]

---

[8] Las cláusulas del contrato de préstamo a las que aludimos establecen lo siguiente:

   ---**SEGUNDA: FINANCIAMIENTO INTERINO:**------------------

        . . . . . . .

     -----**B. LÍNEA DE CRÉDITO NO REVOLVENTE:**----------------
     -----Línea de [c]rédito por la cantidad de [**ciento doce mil doscientos dólares**] **($112,200.00)** y contra la misma [COOPACA] hará desembolsos a solicitud de la [parte deudora] a base del cien por ciento (100%) del costo de construcción de obras, trabajos y etapas realmente terminadas, según sean dichas obras y trabajos debidamente certificados por un ingeniero reconocido que sea aceptable a [COOPACA] y aprobados por [COOPACA], en cuya eventualidad habrá de pagarse el diez por ciento (10%) retenido al contratista, una vez aceptada por [COOPACA] y la deudora la construcción de la estructura terminada.-----------------------------------------

     -----**C. SOLICITUDES DE ADELANTOS, LÍNEA DE CRÉDITO NO REVOLVENTE**[:]---------------------------------------
     -----Solicitudes de adelantos sometidas por escrito por [la parte deudora] a [COOPACA], desglosando el propósito de cada partida que forma parte de la cantidad solicitada y utilizando un formato que sea aceptable a [COOPACA].

De entrada, al examinar detenidamente los contratos objeto de la presente disputa, nos resulta evidente que éstos son vinculantes únicamente entre las partes que los otorgaron. **Así las cosas, el contrato de préstamo es vinculante entre COOPACA y los recurridos.** Mientras que el *Contrato de construcción* y el contrato de construcción

---

Dichos adelantos se harán de acuerdo a las certificaciones que se lleven a cabo conforme a las siguientes etapas de construcción, a saber:

| | | |
|---|---|---|
| PRIMERA ETAPA: | Permisología y [m]ateriales | […] |
| SEGUNDA ETAPA: | Zapata, [p]iso, [p]aredes (50%), [e]lectricidad y [p]lomería [p]arcial[.] Paredes (50%), [t]orta y [t]echo | […] […] |
| TERCERA ETAPA: | Etapa [f]inal | […] |
| CUARTA ETAPA: | Retenido | […] |

. . . . . . . .

-----**G. DESEMBOLSOS BAJO LA LÍNEA DE CRÉDITO NO REVOLVENTE:**-----------------------------------------
-----(i) Los préstamos o adelantos bajo la [l]ínea de [c]rédito se desembolsarán tan pronto la correspondiente certificación de obras y trabajos terminados en sus correspondientes etapas descritas en el Apartado Segundo, Acápite "C" de este [c]ontrato debidamente aprobada por [COOPACA] y se cumpla con los demás requisitos acordados precedentemente. Todos los adelantos se desembolsarán mediante un crédito a una cuenta de depósito que [la deudora] mantendrá con [COOPACA] para estos propósitos.----------------------

. . . . . . . .

-----**UNDÉCIMA: REPRESENTACIÓN ADICIONALES:** L[a parte deudora] representa y garantiza a [COOPACA] que:-------

. . . . . . . .

---9. Cláusulas [a]mbientales.------------------------
-------10. **[COOPACA] no será responsable por defectos o vicios de construcción del [p]royecto.**-----------------

. . . . . . . .

-----**DUOD[É]CIMA: DISPOSICIONES MISCEL[Á]NEAS.**--------

. . . . . . . .
----5. Ninguna enmienda, modificación, terminación, renuncia o tolerancia de cualquiera de las disposiciones del [c]ontrato tendrá validez o eficacia legal alguna al menos que la misma conste en un escrito debidamente suscrito por un [o]ficial [a]utorizado de [COOPACA].---
(Negrilla suplida).

y relevo de responsabilidad son vinculantes entre los recurridos y Casa Bella. Coincidimos con el razonamiento de los recurridos respecto a que el único convenio que rige la relación contractual de éstos y la peticionaria es el contrato de préstamo. Cónsono con ello, y como correctamente argumentan, COOPACA incumplió con las obligaciones convenidas al realizar los desembolsos del préstamo contrario a los acuerdos pactados. A pesar de que las obligaciones contraídas por la peticionaria son claras, ésta decidió desembolsar los fondos del préstamo de construcción conforme lo establecían las cláusulas de un contrato distinto y del cual no es parte.

Específicamente, COOPACA desembolsó los fondos de la **segunda y tercera etapa de la construcción** sin contar con la autorización o solicitud por escrito de los recurridos.[9] Asimismo, al efectuar los pagos, lo hizo mediante cheques a nombre del señor Cruz Cruz y Casa Bella, los cuales entregó directamente a esta última. Esto se hizo en total abstracción de lo expresamente estipulado en el contrato de préstamo que sí suscribió.[10]

---

[9] Según se desprende de las determinaciones de hechos incontrovertidos, desglosadas en la *Sentencia Parcial* del Tribunal de Primera Instancia y acogidas por el Tribunal de Apelaciones, la señora López Rivera "declaró bajo juramento que el día del cierre del préstamo, autorizó a COOPACA a emitir y entregar directamente a Casa Bella [] el primer desembolso correspondiente a la primera etapa de construcción". *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Apéndice del *certiorari*, pág. 541.

[10] Nótese que el contrato de construcción y relevo de responsabilidad formalizado entre Casa Bella y los recurridos establece en su cláusula cinco lo siguiente:

**Al ceñirnos al derecho de obligaciones y contratos, este Tribunal no puede más que avalar la teoría de los recurridos respecto a que el contrato de préstamo constituye la ley entre las partes, por lo que estamos impedidos de relevar a la peticionaria de cumplir con lo que se obligó.** Lo anterior cobra mayor relevancia al considerar que COOPACA, como institución financiera, posee conocimiento especializado sobre las obligaciones contractuales que asume y las repercusiones que conlleva el incumplimiento de los términos pactados. El foro primario invocó incorrectamente la "costumbre" en la industria de la construcción para sustentar su determinación de que los cheques del financiamiento fueron expedidos correctamente por la peticionaria a nombre de Casa Bella y los recurridos. No obstante, sabido es que el uso de la "costumbre" procede en ausencia de una ley aplicable si no es contraria a la moral o al orden público. Tal no es la situación en este caso, pues existía un

---

**---Cinco:** Conforme antes mencionado, en el día de hoy y por el presente documento el [contratante] nombra al [contratista][,] acepta a [COOPACA] como entidad depositaria de los fondos que el [contratante] ha obtenido de [COOPACA] para que los custodie y efectúe pagos parciales mediante cheque[s] que se harán siempre a la orden del [contratante] y el [contratista], según se hayan concluido y aprobado las etapas construidas por el [contratista]. [COOPACA] efectuará los pagos parciales mediante cheques endosados por el [contratante], quien al endosar cada cheque acepta y le representa a [COOPACA] que la etapa ha sido debidamente terminada.-------------------------------------------

contrato entre COOPACA y los recurridos, cuyos términos son claros y específicos.[11]

En virtud de lo señalado, resolvemos que el foro apelativo intermedio no se equivocó al concluir que las obligaciones contractuales que la peticionaria estaba compelida a cumplir eran aquellas consignadas en el contrato de préstamo y no las que surgían de otros acuerdos ajenos a ésta. De igual manera, resolvemos que el planteamiento de COOPACA en torno a que el Tribunal de Apelaciones erró al no aplicar el derecho pertinente a los hechos incontrovertidos establecidos por el Tribunal de Primera Instancia en su *Sentencia Parcial* carece de méritos. Como correctamente concluyó el foro apelativo intermedio, el foro primario realizó inferencias en torno al contrato de préstamo que no se sustentan en la prueba ni en las determinaciones de hechos de la moción de sentencia sumaria presentada por la peticionaria.[12] Peor

---

[11] Somos del criterio que para evitar o minimizar el riesgo por incumplimiento contractual, la peticionaria, antes de formalizar su acuerdo con los recurridos, pudo muy bien haber atemperado las cláusulas del contrato de préstamo, relativas al desembolso de los fondos, con las disposiciones del contrato de construcción y relevo de responsabilidad otorgado entre Casa Bella y los recurridos. También, existía la alternativa de que COOPACA enmendara el contrato de préstamo a tales fines.

[12] Algunas de las inferencias realizadas por el foro primario son las siguientes: (1) "el mero otorgamiento del contrato [de préstamo] debe entenderse como autorización suficiente para emitir los pagos. Más aún cuando el pago puntual de la construcción es uno vital y esencial para el progreso de la obra, toda vez que la ausencia del pago estipulado puede ser justa causa para que el contratista abandone la obra"; (2) "[c]on la firma del [c]ontrato [de préstamo] se le solicitó a la institución financiera que procediera con los desembolsos tan pronto se completaran las etapas acordadas"; (3) "[t]ampoco podemos aceptar que los [codemandantes] entendieran que la expresión contractual "…a solicitud de dueño…" implique que ningún pago podría emitirse sin su solicitud, cuando no fue sino hasta el mes de mayo, hacia finales de la construcción luego que la edificación estaba

aún, al realizar inferencias de forma menos favorable hacia los recurridos (parte que se opuso a la solicitud de sentencia sumaria), el Tribunal de Primera Instancia aplicó incorrectamente el derecho, pues no sólo consideró el contrato de construcción y relevo de responsabilidad para su análisis, sino que liberó a COOPACA de su responsabilidad por incumplimiento contractual.

Resuelto lo anterior, procedemos a atender el cuarto señalamiento de error de la peticionaria. COOPACA arguye que el Tribunal de Apelaciones erró al determinar que ésta es responsable en daños y perjuicios debido a que existe una cláusula explícita que la exime de responder de todo daño por presuntos vicios de construcción. De entrada, aclaramos que el foro apelativo intermedio no resolvió que la peticionaria debía responder por los presuntos vicios de construcción. Todo lo contrario, específicamente dispuso que COOPACA incumplió el contrato de préstamo por lo que procedía devolver el caso al foro primario para la celebración de una vista evidenciaria en la que se

---

levantada y cercano a la fecha de terminación del [c]ontrato, que los [codemandantes] recurrieron a COOPACA para indagar sobre los desembolsos"; (4) "[e]n cuanto a los requisitos del proceso de desembolso, en el inciso G de la Segunda Cláusula del [c]ontrato [de préstamo] se establece que el desembolso se hará tan pronto se certifiquen las etapas. Ninguno de los contratos relacionados con este caso incluye una cláusula que exprese específicamente a quién deberá entregársele el cheque una vez expedido por la institución financiera", y (5) "tomando en consideración el uso y costumbre de la industria [de la construcción] en Puerto Rico, y la buena fe que debe coexistir en todas las fases del negocio jurídico, establecemos que en ausencia de provisión contractual, resulta inmaterial a quién se entrega el cheque que ha sido expedido a nombre de ambas partes -el contratista y el dueño de la obra- siempre que el cheque se haya expedido a nombre de ambos como en este caso ocurrió". *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Apéndice del *certiorari*, págs. 33-35.

ventilara la existencia o no de los **presuntos daños y perjuicios contractuales** sufridos por los recurridos.

Ahora bien, por entender que en el presente caso aplica la normativa relacionada con las estipulaciones contractuales a favor de un tercero, aprovechamos la ocasión para aclarar que, si bien el único convenio que gobierna la relación entre la peticionaria y los recurridos es el contrato de préstamo, el contrato de construcción y relevo de responsabilidad -como bien lo determinó el Tribunal de Primera Instancia- contiene estipulaciones en beneficio de COOPACA. [13] Nótese que, como tercero beneficiado, la peticionaria estaba en todo su derecho de reclamar (tal cual lo hizo) el cumplimiento de lo expresamente aceptado y manifestado por los recurridos y Casa Bella en cuanto a su falta de responsabilidad por defecto o vicios de construcción, y por daños y perjuicios a terceras personas.

Sobre este aspecto, el Tribunal de Apelaciones señaló en su *Sentencia* que el contrato de préstamo contiene una cláusula que exime de responsabilidad a la peticionaria por defectos o vicios de construcción. **Adviértase también,**

---

[13] En resumen, Casa Bella aceptó y manifestó en el referido convenio que las únicas funciones de la peticionaria fueron financiar la obra a construir (ejerciendo las funciones normales de una institución financiera) y de ninguna manera promovió ni participó en la construcción de la propiedad. Los recurridos, por su parte, aceptaron y manifestaron que la única función de COOPACA sería efectuar los pagos parciales a éstos y a Casa Bella, y pagar los materiales de las distintas etapas de la construcción. En conformidad con esto, acordaron relevar de responsabilidad a la peticionaria por cualquier incumplimiento de Casa Bella y por cualquier defecto o vicios de construcción, y daños y perjuicios a terceras personas.

**sin embargo, que a pesar de que un contrato (como lo fue en este caso el contrato de construcción y relevo de responsabilidad) no sea vinculante para un tercero que no formó parte del mismo, no excluye la posibilidad de que éste pueda invocar alguna disposición en su beneficio.** Resolver lo contrario desnaturalizaría el principio de la autonomía de la voluntad y la posibilidad de que los contratantes puedan pactar estipulaciones a favor de un tercero.

Aclarado lo anterior, y atado al hecho de que no hay nada en el récord apelativo que nos mueva a concluir que COOPACA rebasó sus funciones financieras o asumió, directa o indirectamente, frente a los recurridos la obligación de garantizar la calidad de la obra y de los materiales, **determinamos que la peticionaria deberá responder únicamente por los presuntos daños contractuales sufridos por los recurridos como consecuencia de lo pactado entre las partes en el contrato de préstamo, los cuales deberán ser probados, y no por los presuntos vicios de construcción.**

Finalmente, surge de la prueba que obra en autos que la señora López Rivera declaró bajo juramento que ella y el señor Cruz Cruz tenían conocimiento de que la construcción de la propiedad continuaba su curso debido a que visitaban la obra con frecuencia.[14] No empece a ello,

---

[14] *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Apéndice del *certiorari*, pág. 543.

luego de que COOPACA emitiera el pago de la primera etapa de la construcción, el cual autorizaron, no solicitaron a la peticionaria información sobre otros pagos realizados ni indagaron con Casa Bella el pago de etapas adicionales,[15] a sabiendas de que tanto la construcción del inmueble como los pagos del financiamiento se harían en cuatro (4) etapas.[16]    Añádase que la señora López Rivera declaró que todas las comunicaciones relacionadas con el contrato de préstamo fueron realizadas por ella mediante llamadas telefónicas o correos electrónicos, pero nunca notificó a COOPACA de algún problema con las construcciones realizadas.[17]    No fue sino hasta el 19 de junio de 2014, once (11) días antes de que venciera el término de Casa Bella para concluir la obra, que la señora López Rivera envió un correo electrónico a la peticionaria en el que le solicitaba la paralización de los pagos a favor de Casa Bella e información de las etapas ya pagadas.[18]

Es por lo anterior que los recurridos no pueden desligarse -como pretenden hacerlo- de las consecuencias de permitir, **a ciencia y paciencia**, el desarrollo de un proyecto con presuntos problemas de construcción sin informarle a la institución financiera en cuestión sobre dicha situación y sin indagar u oponerse oportunamente al

---

[15]   Íd., págs. 541-543.

[16]   Íd., pág. 543.

[17]   Íd., págs. 544-545.

[18]   Íd., pág. 545.

desembolso de los fondos. Al permanecer de brazos cruzados, vulneraron el principio de la buena fe que debe gobernar en todas las relaciones contractuales y contribuyeron a los presuntos daños que hoy reclaman. Por último, sabido es que la valoración justa y necesaria para compensar los daños está confiada a la experiencia y discreción del foro primario. Así pues, corresponde a dicho tribunal estimar y valorar las partidas de daños correspondientes, velando en todo momento que los perjudicados sean resarcidos de forma justa y razonable, sin que al indemnizarlo se castigue injustamente al demandado.

**IV**

Por los fundamentos expresados, se modifica la *Sentencia* emitida el 27 de marzo de 2023 por el Tribunal de Apelaciones a los únicos fines de que, previa celebración de una vista evidenciaria por el Tribunal de Primera Instancia, además de determinar si COOPACA causó o no los daños reclamados por los recurridos por su incumplimiento contractual, valore los daños, de haberlos, en proporción a la actitud pasiva que asumieron los recurridos al no notificarle a la peticionaria sobre los presuntos problemas de construcción de la propiedad y, al no indagar oportunamente si COOPACA había realizado los desembolsos de la segunda y tercera etapa del proyecto debido a que conocían que el mismo continuaba su curso sin oponerse a ello. Así modificada, se confirma dicha

*Sentencia*.    En  consecuencia,  se  devuelve  el  caso  al
Tribunal  de  Primera  Instancia  para  la  continuación  de  los
procedimientos  de  acuerdo  con  esta  Opinión

Se  dictará  Sentencia  en  conformidad.


                              ROBERTO  FELIBERTI  CINTRÓN
                                    Juez  Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Edwin Cruz Cruz; María López Rivera<br><br>Recurridos<br><br>v.<br><br>Casa Bella Corp.; Cooperativa de Ahorro y Crédito de Arecibo y otros<br><br>Peticionarios | CC-2023-267 | *Certiorari* |
|---|---|---|

**SENTENCIA**

En San Juan, Puerto Rico a 8 de mayo de 2024.

Por los fundamentos expresados en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se modifica la Sentencia emitida el 27 de marzo de 2023 por el Tribunal de Apelaciones a los únicos fines de que, previa celebración de una vista evidenciaria por el Tribunal de Primera Instancia, además de determinar si COOPACA causó o no los daños reclamados por los recurridos por su incumplimiento contractual, valore los daños, de haberlos, en proporción a la actitud pasiva que asumieron los recurridos al no notificarle a la peticionaria sobre los presuntos problemas de construcción de la propiedad y, al no indagar oportunamente si COOPACA había realizado los desembolsos de la segunda y tercera etapa del proyecto debido a que conocían que el mismo continuaba su curso sin oponerse a ello. Así modificada, se confirma dicha Sentencia. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de acuerdo con lo provisto en la Opinión.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo