Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| LUZ ENILDA CANCEL MORALES<br><br>Apelante<br><br>v.<br><br>COOPERATIVA DE AHORRO Y CRÉDITO PEPINIANA Y OTROS<br><br>Apelados | KLAN202400747 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Sebastián<br><br>Caso Núm.: SS2020CV00440<br><br>Sobre: Incumplimiento de con Contrato, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y la Jueza Prats Palerm.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de octubre de 2024.

La apelante, Luz E. Cancel Morales, solicita que revoquemos la Sentencia Sumaria Parcial en la que el Tribunal de Primera Instancia desestimó la demanda contra la Cooperativa de Ahorro y Crédito La Pepiniana.

La apelada, Cooperativa de Ahorro y Crédito La Pepiniana, presentó su oposición al recurso.

**I**

La apelante presentó una demanda contra la apelada por incumplimiento de contrato. Según la apelante, la Cooperativa incurrió en negligencia, dolo y morosidad, porque le entregó dinero de sus cuentas a terceros y congeló sus acciones. La apelante reclamó una indemnización por embargo ilegal, retención ilegal de acciones y daños y perjuicios.

La demanda incluyó las alegaciones siguientes. El 15 de marzo de 2014, la apelante y el señor Guadalupe Acevedo otorgaron capitulaciones matrimoniales. Ambos acordaron que su matrimonio

estaría regido por una total separación de bienes. El 29 de agosto de 2015 se casaron bajo ese régimen. El 8 de enero de 2015, la apelante abrió una cuenta corriente en la Cooperativa y autorizó a su esposo a realizar transacciones. El 2 de junio de 2016, el señor Francisco Román Medina presentó una demanda contra el esposo de la apelante, la sociedad legal de gananciales y Quesos del País La Esperanza Inc. El TPI dictó sentencia en ese caso contra el esposo de la apelante y demás demandados. El 2 de octubre de 2018, un alguacil acudió a la Cooperativa para embargar las cuentas de los demandados en ese caso. La apelada le entregó todo el dinero de las cuentas de la apelante, sin verificar que en la orden de embargo no estaba su nombre y a sabiendas de que su esposo solo estaba autorizado a firmar. La apelante intervino en el pleito objeto de la orden de desahucio para solicitar la devolución de su dinero. El 17 de enero de 2020, el tribunal ordenó la devolución del dinero embargado y que la Cooperativa descongelara sus acciones.

Según la apelante, la Cooperativa violentó las políticas de privacidad que cobijaba a sus cuentas, porque le divulgó los balances disponibles y le entregó el dinero al alguacil que diligenció la orden de embargo. La apelante reclamó a la apelada una compensación no menor de trescientos cincuenta mil dólares ($350,000.00) por incumplimiento de contrato, violar las disposiciones sobre privacidad, su negligencia de entregar el dinero de sus cuentas, a pesar de que su nombre no estaba en la orden de embargo y que no estaba bajo la jurisdicción del tribunal en ese caso y por los daños causados por su negligencia, dolo y morosidad.

La Cooperativa presentó su contestación a la demanda en la que negó las alegaciones en su contra. El descubrimiento de prueba finalizó el 26 de octubre de 2022. El 22 de noviembre de 2022, la Cooperativa presentó una moción de sentencia sumaria. La Cooperativa alegó que no era responsable del embargo de las

cuentas de la apelante y que solo cumplió con la orden del tribunal y con los acuerdos pactados con la señora Cancel Morales. Según la apelada, la apelante autorizó expresamente a su esposo a hacer transacciones en su cuenta número 51714. La apelada alegó que el embargo fue ordenado por el tribunal para hacer efectiva la sentencia contra el esposo de la apelante, su sociedad legal de gananciales y la corporación Quesos del País La Esperanza. La Cooperativa adujo que la apelante admitió que nunca le informó que estaba casada bajo el régimen de separación de bienes. Igualmente advirtió que contractualmente estaba impedida de cuestionar el embargo y que la apelante sabía que necesitaba una orden judicial para que sus acciones fueran descongeladas y que el alguacil le devolviera el dinero de sus cuentas. La Cooperativa señaló que la apelante recibió todo su dinero y que sus acciones se liquidaron. Por último, adujo que la apelante se autoinfligió los daños alegados.

Según la apelada, los hechos en los que la apelante basa la demanda, sus admisiones en la deposición, los documentos anejados y otros hechos incontrovertidos, muestran claramente que no existe controversia real sustancial en cuanto a ningún hecho material de la demanda y que como cuestión de derecho procedía declarar NO HA LUGAR sumariamente la demanda en su contra.

La apelante no presentó oposición en el término establecido ni en la prórroga concedida.

El TPI dio por sometida la solicitud de sentencia sumaria. El foro primario dictó sentencia sumaria a favor de la apelada, basado en la robusta prueba documental presentada y autenticada por la propia apelante en su deposición, los acuerdos contractuales de las cuentas bancarias, los documentos en los que la apelante autorizó a su esposo a hacer transacciones en sus cuentas, los documentos en los que la apelante autorizó el retiro de sus acciones para depositarlas en la cuenta de Quesos del País La Esperanza, la Orden

y Mandamiento de Embargo, los cheques del dinero embargado, la resolución ordenando la liquidación de las acciones, el contrato de préstamo y pagaré firmado por la apelante y la declaración jurada de la señora Adianez Rosado Santiago.

Según el TPI, no existe controversia sobre los hechos siguientes. La apelante era socia de la apelada, donde tenía cuentas de: (1) ahorro, (2) cheque y (3) acciones. La señora Cancel Morales suscribió contratos para todas las cuentas. Los contratos suscritos contienen los términos, condiciones y obligaciones que cada parte debía cumplir. La Cooperativa exige la presentación de identificación con foto, seguro social y recibo de agua o luz, para poder abrir una cuenta. Además, exige una cantidad específica dependiendo del tipo de cuenta que se interesa abrir. La apelante leyó los términos y condiciones de cada uno de los contratos, antes de firmarlos. Determinaciones de hecho 1-3.

Además, el TPI determinó como hechos no controvertidos los siguientes:

4. La Sra. Cancel abrió una cuenta de ahorro regular con la Cooperativa Pepiniana el 14 de junio de 2010.

5. El contrato de la cuenta de ahorro regular suscrito entre las partes establece lo siguiente:

a) En la página 1, sección A sobre disposiciones generales establece "el depositante (entiéndase socio o no socio, según aplique y las personas autorizadas) convienen y suscriben el presente contrato de cuenta de ahorro regular con la Cooperativa de Ahorro y Crédito Pepiniana, conforme a los siguientes términos y condiciones, los cuales se aplicarán a la cuenta y a todas las transacciones que de tiempo en tiempo se efectúen bajo la misma".

b) En la sección "D" de las disposiciones generales del contrato establece que "El depositante acuerda que solo podrán efectuar transacciones en la cuenta aquellas personas cuyas firmas estén debidamente registradas en los documentos y/o formularios correspondientes".

c) En la sección "E" de las disposiciones generales del contrato establece que "Para propósitos de este contrato, se entenderá por persona aquella

cuyo nombre aparece al final del presente contrato o cuyo nombre y firma aparezca en aquellos contratos y/o documentos que de tiempo en tiempo el depositante suscriba. [...] Toda persona autorizada estará facultada a endosar para depositar a la cuenta del depositante, efectuar retiro de dinero contra la misma, depositar para acreditar a la cuenta, cheques y otros instrumentos, y a ejercer, además, todas las facultades y derecho de un depositante en cuenta conjunta, según lo expuesto en el presente contrato".

d. La sección "H" de las disposiciones generales del contrato establece que "la cuenta estará sujeta a la legislación y reglamentos aplicables, así como a los reglamentos de la Cooperativa que estén en vigor de tiempo en tiempo y aquellos que se adopten en el futuro".

e. La sección "I" de las disposiciones generales del contrato establece que "La Cooperativa estará autorizada a debitar contra la cuenta cualquier suma de dinero que el depositante adeude a la Cooperativa por concepto de préstamos incluyendo: líneas de crédito, sobregiros, cheques sin fondo o cualquier otra deuda u obligación que al presente exista o se pueda contraer en el futuro. De efectuarse algún debito por los conceptos antes mencionados, la Cooperativa no incurrirá en responsabilidad alguna por razón de la insuficiencia de fondos que resulte con motivo de tales cargos en la cuenta."

f. La sección "K" de las disposiciones generales del contrato establece que "La Cooperativa podrá ejercer, sin aviso previo, sobre los fondos depositados en la cuenta, el derecho de compensación por cualquier deuda, préstamo, sobregiro y cualesquiera otras obligaciones del depositante y cualquiera de las personas autorizadas de efectuarse algún debito por los conceptos antes mencionados. La Cooperativa no incurrirá en responsabilidad alguna por razón de la insuficiencia de fondos que resulte con motivo de tales cargos en la cuenta."

g. La sección "N" de las disposiciones generales del contrato establece que "Conforme a la legislación aplicable, las acciones de capital, depósitos y demás haberes que los socios o depositantes posean en la Cooperativa quedarán gravadas hasta el límite de la deuda, si alguna, que estos mantengan con la Cooperativa. Dichas acciones de capital, depósitos y demás haberes no estarán sujetos a embargo para satisfacer una deuda distinta a la contraída con la Cooperativa hasta el monto de la obligación contraída con la Cooperativa al momento de la sentencia."

h. En la sección "B" de Depósitos y Retiros en el inciso (6) dispone que "La Cooperativa no será responsable por transacciones que no puedan completarse por estar los fondos sujetos a reclamaciones judiciales o restricciones similares".

i. En la sección "H" de la página 2 que habla sobre los embargos, establece que "(1) el depositante acuerda y reconoce que, ante el diligenciamiento de una orden o requerimiento de embargo emitido por un tribunal o autoridad competente, la Cooperativa congelará y/o entregará los fondos disponibles en las cuentas al momento del diligenciamiento, los cuales serán aquellos no grabados por las deudas del depositante con la Cooperativa al momento de dicho diligenciamiento. La congelación y/o entrega de fondos se llevarán a cabo según los términos de la orden o requerimiento de embargo sin necesidad de emitir notificación previa al depositante". En la sección número 2 indica "la Cooperativa no tendrá obligación alguna de impugnar, controvertir o cuestionar los términos de una orden o requerimiento de embargo o de alegar cualquier defensa que pueda tener el depositante frente a la persona o entidad promovente de la orden o requerimiento de embargo".

6. La Sra. Cancel abrió una cuenta de acciones con la Cooperativa Pepiniana el 14 de junio de 2010.

7. El contrato de la cuenta de acciones suscrito entre las partes establece lo siguiente:

a. El inciso "B" de las disposiciones generales establece "Los términos, cargos y condiciones aplicables a la cuenta serán aquellos que determine la Cooperativa de tiempo en tiempo. El socio titular reconoce y acepta que dichos términos, cargos y condiciones están sujeto a cambios sin previo aviso a discreción de la Cooperativa."

b. El inciso "F" de la parte de disposiciones generales establece "La cuenta estará sujeta a la legislación y reglamentos aplicables, así como los reglamentos de la Cooperativa que estén en vigor de tiempo en tiempo y aquellos que se adopten en el futuro".

c. El inciso "G" de la parte de disposiciones generales establece que "La Cooperativa estará autorizada a debitar contra la cuenta cualquier suma de dinero que el socio titular adeude a la Cooperativa por concepto de préstamos incluyendo, líneas de crédito, sobregiros, cheques sin fondo o cualquier otra deuda u obligación que al presente existe o se pueda contraer en el fututo."

d. El inciso "H" de la parte de disposiciones generales establece "La Cooperativa podrá ejercer, sin aviso previo, sobre los fondos depositados en la cuenta, el derecho de compensación por cualquier deuda, préstamo, sobregiro y cualesquiera otras obligaciones del socio titular."

e. El inciso "J" de la parte de disposiciones generales establece "Conforme a la legislación aplicable, las acciones de capital, depósitos y demás haberes que los socios posean en la cooperativa quedarán gravados hasta el límite de la deuda, si alguna, que estos mantengan con la Cooperativa".

f. En la sección "F" sobre embargos se establece que (1) "El socio titular acuerda y reconoce que, ante el diligenciamiento de una orden o requerimiento de embargo emitido por un tribunal o autoridad competente, la Cooperativa congelara y/o entregara los fondos disponibles en la cuenta al momento del diligenciamiento, los cuales serán aquellos no gravados por las deudas del socio con la cooperativa al momento de dicho diligenciamiento. La congelación o entrega de dichos fondos se llevará a cabo según los términos de la orden o requerimiento de embargo y sin necesidad de emitir notificación previa al socio titular." El inciso dos (2) señala que "La cooperativa no tendrá obligación alguna de impugnar, controvertir o cuestionar los términos de una orden o requerimiento de embargo o de alegar cualquier defensa que pueda tener el socio frente a la persona o entidad promovente de la orden o requerimiento de embargo."

g. En la sección "H" sobre límites de responsabilidad dispone que "en caso de incumplimiento de la Cooperativa con cualquiera de las disposiciones de este contrato, ésta responderá solamente por los daños reales que el socio sufra. No se presumirán daños a la reputación del socio. La Cooperativa no estará obligada a compensar por daños y angustias mentales ni por daños a los negocios y actividades del socio."

8. De otra parte, la Sra. Cancel abrió una cuenta de cheque o corriente en la Cooperativa el 8 de enero de 2015.

9. El contrato de la cuenta de cheques suscrito entre las partes establece lo siguiente:

a. En la sección de disposiciones generales "F" se establece que "la cuenta estará sujeta a los términos y condiciones establecidos en este contrato y en las divulgaciones correspondientes a esta cuenta".

b. La sección "F" señala que "el depositante acuerda que solo podrán efectuar transacciones en la cuenta y expedir o liberar cheques bajo la misma aquellas personas cuyas firmas están debidamente registradas en los documentos y/o formularios correspondientes conforme se disponga en este contrato".

c. La sección "G" establece que "Para propósitos de este contrato, se entenderá por persona autorizada aquellas cuyos nombres y firmas aparecen al final del presente contrato o cuyos nombres y firmas aparezcan en aquellos contratos que de tiempo en tiempo el depositante suscriba."

d. La sección "J" establece que "la Cooperativa estará autorizada a debitar contra la cuenta cualquier suma de dinero que el depositante adeude a la Cooperativa por concepto de préstamos incluyendo líneas de crédito, sobregiros, cheque sin fondos o cualquier otra deuda u obligación que al presente exista o se pueda contraer en el futuro".

e. La sección "M" establece que "Los depósitos y demás haberes que el depositante posea en la Cooperativa quedarán gravados hasta el límite de la deuda, si alguna, que estos mantengan con la Cooperativa."

f. La sección "I" sobre embargos señala "el depositante acuerda y reconoce que ante el diligenciamiento de una orden o requerimiento de embargo emitido por un tribunal o autoridad competente la Cooperativa congelará y/o entregará los fondos disponibles en la cuenta al momento del diligenciamiento, los cuales serán aquellos no grabados por las deudas del depositante con la Cooperativa al momento de dicho diligenciamiento".

El TPI también determinó los hechos siguientes. La apelante admitió que firmó los contratos y que se comprometió a conducirse conforme a sus términos y condiciones. El 29 de agosto de 2015, la apelante contrajo matrimonio con el señor Guadalupe Acevedo Ortiz. La apelante trabaja como supervisora en la fábrica de Quesos del País La Esperanza desde junio de 2012. Los días 14 de junio de 2014 y 8 de enero de 2015, la apelante cumplimentó un formulario de solicitud de ingreso de cuenta mediante el que autorizó a su esposo a hacer transacciones en sus cuentas y como firmante. A través de ese documento, la apelante autorizó al señor Acevedo a

realizar diferentes transacciones en sus cuentas que incluían sin limitarse a depositar dinero en las cuentas, retirar dinero de las cuentas, endosar cheques para depositarlos en las cuentas, acceder a los balances de las cuentas y los estados bancarios, saber o tener constancia sobre los movimientos en las cuentas. El señor Acevedo podía hacer todas esas transacciones, sin la presencia de la apelante. Según la información provista por la apelante en el formulario del 2014, su ingreso mensual como supervisora en la fábrica era de $2,166.67 y el del señor Acevedo $10,000.00. La apelante hizo constar en el formulario del 2015 que su ingreso era de $2,166.67 y el del señor Acevedo $11,387.00. La apelante admitió en su deposición que la autorización del señor Acevedo era para sus cuentas de ahorro y de cheque. Determinaciones de hecho 10 a 15.

Otros hechos que constan en la sentencia son los siguientes. El 30 de junio de 2016, la apelante pidió retirar cinco mil dólares ($5,000.000) de su cuenta de acciones para cubrir gastos y requirió expresamente que se transfirieran a la cuenta de cheque de la Corporación Quesos del País La Esperanza. La apelante admitió en su deposición que: (1) el señor Acevedo depositaba dinero en su cuenta para pagar los servicios que ambos usaban en el hogar conyugal como el agua, luz y compra, (2) el dinero de la cuenta no era solamente de su cheque de trabajo porque su esposo depositaba dinero en ocasiones en que ella no estaba presente (3) Quesos del País, su esposo y otras entidades fueron demandados en un pleito en el que se dictó una sentencia que se hizo efectiva mediante embargo, (4) discutía con su esposo los trámites de este caso, (5) el pleito en el que estaba involucrado su esposo trajo muchas dificultades en su matrimonio y problemas económicos, (6) no puede dar fe de la procedencia de todos los depósitos que su esposo hizo en sus cuentas. Determinaciones de Hecho 16-22.

El foro primario entendió probados los hechos siguientes. La apelante declaró que, para la fecha del embargo, trabajaba como supervisora de producción y que se enteró de ese pleito en el año 2016, por una carta de cese y desista que llegó a la empresa. No obstante, también dijo que se enteró de la demanda antes de efectuarse el embargo, cuando se emplazó a las partes. La apelante sabía que la demanda también era contra su esposo y la sociedad legal de gananciales. Sin embargo, admitió que no fue a la Cooperativa para avisar lo que estaba sucediendo, cuando se enteró de la demanda El 2 de octubre de 2018, el alguacil Carlos Soto Bonilla acudió a la apelada para diligenciar el embargo ordenado en el caso A2C1201600393 y a hacer efectiva la sentencia. Los documentos entregados a la apelada ordenaban el embargo de las cuentas de la Corporación Quesos del País, el señor Acevedo y la sociedad legal de gananciales. La apelada consultó su asesor legal. La cuenta se trató como una sociedad legal de gananciales. La apelada proveyó al alguacil la información de las cuentas e identificó las que debía divulgarle para indicarle el balance. El 5 de octubre de 2018, la apelada entregó al alguacil tres cheques cuyas cantidades totales ascendían a $19,745.13. La Cooperativa no entregó las acciones de la apelante porque garantizan un préstamo. No obstante, las congeló. Determinaciones de hecho 23-30.

Finalmente constan en la sentencia los hechos a continuación. La apelante se enteró del embargo a sus cuentas el 5 de octubre de 2018, cuando el señor Acevedo fue a hacer unas transacciones y el dinero no estaba disponible. La Cooperativa no estaba obligada contractualmente a impugnar, controvertir o cuestionar una orden o requerimiento de embargo. Tampoco podía alegar cualquier defensa del socio frente al promovente de la orden. El 15 de febrero de 2020, la apelada entregó a la apelante $12,077.54 correspondientes a sus acciones, luego de liquidar el

préstamo que hizo a la Cooperativa. La apelada no obtuvo ningún beneficio del embargo. A contrario sensu, siguió el mandamiento y orden del tribunal y entregó el dinero. Determinaciones de hecho 31-34.

El TPI dio por admitidos los hechos materiales que alegó la Cooperativa, debido a que la apelante no compareció dentro del término legal establecido, ni en las extensiones concedidas. Al TPI le quedó claro que la apelante no disputó los hechos propuestos y bien sustentados por la Cooperativa. El foro apelado no dio crédito a sus alegaciones de que la Cooperativa violentó las políticas de privacidad que cobijan la información de sus cuentas. El TPI exoneró a la Cooperativa de responsabilidad, por cumplir con la orden de embargo contra el señor Acevedo, su esposa y la sociedad legal de gananciales.

El foro apelado recalcó que, es un hecho que la Cooperativa desconocía que la apelante estaba casada bajo el régimen de separación de bienes. Según el TPI, la propia apelante reconoció que nunca se lo informó a la apelada, no le proveyó copia de la escritura de capitulaciones y que no lo hizo constar en los documentos institucionales. El TPI hizo hincapié en que la apelante admitió durante el descubrimiento de prueba su responsabilidad de informar a la Cooperativa que estaba casada bajo el régimen de separación de bienes. El foro primario dio por hecho que la apelante nunca le proveyó esa información a la Cooperativa, a pesar de que sabia del pleito que se estaba litigando contra su esposo y la sociedad legal de gananciales.

La decisión está basada en los acuerdos suscritos en los contratos de cuenta que la apelante otorgó con la apelada. El TPI concluyó que la apelante conocía sus obligaciones y derechos, las condiciones del contrato y la existencia de las disposiciones referentes a los procedimientos de embargo. Según el TPI, la

apelante conocía el contenido de los contratos porque los leyó y firmó. El foro primario concluyó que la apelante tenía amplio conocimiento de que la apelada no cuestionaría ningún embargo sobre sus cuentas, porque así lo acordaron contractualmente.

Al TPI también le pareció importante que la apelante autorizó por escrito a su esposo a efectuar múltiples transacciones en sus cuentas y que la actuación de ambos provocó que la apelada no pudiera distinguir a quién pertenecían los fondos depositados. El TPI hizo hincapié en que la propia apelante declaró que su esposo depositaba dinero en su cuenta para los gastos del hogar y que se evidenció que ella retiró cinco mil dólares ($5,000.00) para depositarlos en la cuenta que la Corporación Quesos del País, tenía en la Cooperativa. El foro apelado concluyó que esa mezcla de fondos pudo generar una comunidad de bienes, que impidió a la apelada distinguir a quién pertenecían en su totalidad los depósitos de las cuentas de la apelante. Según el TPI, la apelante no cumplió con el peso de prueba establecido en *Banco Bilbao Vizcaya v. López Montes,* 168 DPR 700 (2006), porque no evidenció que era la propietaria de todos los fondos depositados en las cuentas embargadas.

El TPI resolvió que la Cooperativa actuó en el marco de la ley y conforme a los contratos firmados con la apelante. El foro primario llegó a esa conclusión porque los contratos establecían que la Cooperativa no tenía la facultad de objetar, impugnar, controvertir ni cuestionar los términos de una orden de requerimiento de embargo. Según el TPI, las partes también acordaron que la Cooperativa, tampoco tenía facultad para alegar cualquier defensa del depositante frente al promovente de la orden de embargo. Los acuerdos expresamente contenidos en los contratos de las cuentas de la apelada llevaron al TPI a concluir que la Cooperativa no tenía otra alternativa que no fuera cumplir la orden de embargo.

El foro apelado declaró ha lugar la solicitud de sentencia sumaria de la apelada, desestimó con perjuicio la demanda en su contra y ordenó a la apelante el pago de la costas y gastos del litigio y $3,500 de honorarios.

La apelante presentó este recurso en el que alega que:

El Tribunal de Primera Instancia erró al dictar sentencia sumaria, pues, aplicó incorrectamente la presunción de ganancialidad establecida en BBVA v. López Montes, *supra*, y adjudicó asuntos de estado mental que no podían resolverse mediante sentencia sumaria.

El Tribunal de Primera Instancia erró en su aplicación del estándar aplicable al evaluar una solicitud de sentencia sumaria en su modalidad de insuficiencia de la prueba. El foro recurrido no tuvo ante sí evidencia que demostrara la existencia del hecho base para aplicar la presunción que aplicó, ni estuvo ante evidencia de que la presunción no podía ser rebatida.

El Tribunal de Primera Instancia erró al imponerle a la apelante el pago de honorarios cuando no hubo una determinación de temeridad, ni hubo temeridad. En la alternativa, el Tribunal de Primera Instancia abusó de su discreción al imponerle a la demandante $3,500.00 en honorarios de abogados, por ser una cantidad excesiva.

## II

### Moción de Sentencia Sumaria

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo. No obstante, para que proceda es necesario que, de los documentos no controvertidos, surja que no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y

únicamente resta aplicar el derecho. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47; *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, exige el cumplimiento de ciertos requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra.* La sentencia sumaria no puede dictarse cuando (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

La parte demandada puede solicitar una moción de sentencia sumaria basada en la insuficiencia de la prueba de la demandante. Esta modalidad de sentencia sumaria procede cuando la parte demandante no tiene la evidencia suficiente para probar su caso. El promovente de una moción de sentencia sumaria por insuficiencia de la prueba debe demostrar que (1) la vista es innecesaria, (2) el demandante no cuenta con evidencia suficiente para probar algún hecho esencial y (3) como cuestión de derecho procede la desestimación de la reclamación. No obstante, es necesario que el promovido haya tenido amplia oportunidad para realizar un descubrimiento de prueba adecuado. Al promovente le corresponde demostrar que la promovida no cuenta con evidencia admisible suficiente para probar por lo menos un elemento esencial para su caso. No existe razón para llegar al juicio cuando la demandante no

cuenta con la evidencia necesaria, luego de finalizado el descubrimiento de prueba. *Ramos Pérez v. Univisión,* 178 DPR 200, 217-218 (2010).

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra,* y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan los requisitos de forma codificados en la Regla 36, *supra.* El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es una tarea del Tribunal de Primera Instancia. La revisión que hace el Tribunal de Apelaciones es la de un juicio de novo. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Cruz, López v. Casa Bella y otros,* supra; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

Al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de novo, si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

### Doctrina General de los Contratos

Según lo establecido en el Art. 1044 del Código Civil de 1930 vigente a la fecha de los hechos, 31 LPRA sec. 2994, las obligaciones

que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse a tenor de los mismos. El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o prestar algún servicio. Art. 1206 del Código Civil, 31 LPRA sec. 3371. Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, la moral, ni al orden público. Art. 1207, 31 LPRA sec. 3372. La validez y el cumplimiento de los contratos no puede dejarse al arbitrio de uno de los contratantes. Art. 1208, 31 LPRA sec. 3373. Cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. 31 LPRA sec. 1233, 31 LPRA sec. 3471. No obstante, en ocasiones, la voluntad de las partes no puede determinarse con la mera lectura de las cláusulas contractuales. Cuando esa es la situación, será necesario juzgar la intención de los contratantes a la luz de los actos anteriores, coetáneos y posteriores al contrato, así como las circunstancias indicativas de la voluntad de las partes. *Cruz, López v. Casa Bella y otros,* supra. Los contratantes que incurren en negligencia, dolo o morosidad en el cumplimiento de sus obligaciones están sujetos a indemnizar por los daños causados. Art. 1054, 31 LPRA sec. 3018.

### *BBVA v. SLG López, Sasso,* 168 DPR 700, 774 (2006)

El banco presentó una demanda de cobro de dinero y ejecución de hipoteca contra los demandados y su sociedad legal de gananciales y pidió el embargo de sus bienes muebles e inmuebles para asegurar la efectividad de la sentencia. El tribunal autorizó el embargo de una cuenta que estaba a nombre de la demandada y de su madre. Esta última intervino en el pleito para impugnar la validez del embargo. La madre de la demandada alegó que todo el dinero depositado en la cuenta era suyo. El tribunal dictó sentencia en

rebeldía. El banco pidió una vista evidenciaria para determinar si podía cobrar del dinero embargado en la cuenta conjunta. El tribunal ordenó la devolución del dinero embargado y eximió de responsabilidad solidaria a la madre de la demandada. El foro apelativo revocó y validó el embargo. El Tribunal Supremo de Puerto Rico revocó al apelativo y devolvió el caso al TPI para que celebrara una vista para dilucidar la tenencia del dinero.

Las controversias se redujeron a determinar, 1) si un acreedor puede embargar en su totalidad el dinero depositado en una cuenta conjunta, perteneciente a su deudor para asegurar la efectividad de la sentencia; 2) o en su defecto, qué proporción del dinero depositado puede embargar.

La decisión del Tribunal Supremo fue la siguiente. Un acreedor puede embargar una cuenta bancaria a nombre de un deudor y de un tercero, porque existe una presunción de que los fondos depositados pertenecen en su totalidad a los titulares de la cuenta conjunta. No obstante, hay que considerar que los contratos de cuenta corriente o de ahorro entre una institución bancaria y un cliente son un formulario preimpreso que no le permite al depositante negociar sus términos. Por esa razón, no constituyen una verdad inexpugnable en perjuicio de los codueños de la cuenta conjunta. La presunción de que el dinero de la cuenta conjunta pertenece a ambos indistintamente es rebatible.

Cualquier parte afectada puede impugnar esa presunción. El peso de la prueba lo tiene quien impugna la presunción que puede rebatirse con evidencia testifical o documental. No obstante, esa evidencia tiene que ser suficiente para que el juzgador de los hechos pueda establecer a quién pertenecen los fondos y en qué proporción o cantidad. El análisis podrá estar basado en: (1) los términos del contrato con la institución financiera, (2) la intención de las partes al establecer la cuenta, (3) el control que ejerce el deudor sobre la

cuenta conjunta, (4) los estados de cuenta que permitan trazar el origen del dinero y su movimiento, (5) el propósito para el cual fue creada la cuenta conjunta, (6) el conocimiento del deudor sobre los movimientos realizados en la cuenta a nombre de quien aparecen, (7) los cheques, (8) quién está autorizado a firmarlos y (9) cualquier otra evidencia que el tribunal estime necesaria y apropiada. El acreedor solo podrá repetir contra aquella porción del dinero depositado que se determine pertenece a su deudor. El sobrante no podrá estar sujeto a embargo. El tribunal celebrará una vista a la mayor brevedad posible para dilucidar la tenencia del dinero.

## EMBARGO ILEGAL

La causa de acción por embargo ilegal es una acción ex delicto fundamentada al amparo de las acciones por daños y perjuicios. Su propósito es recobrar los daños y perjuicios causados por un alegado embargo ilegal. La parte demandante tiene que alegar y probar que: (1) sus bienes fueron embargados, (2) la acción en su contra y en la cual se decretó el embargo culminó con una sentencia firme a su favor y (3) los daños sufridos. *Nieves Díaz v. González Massas,* 178 DPR 820, 846 -847 (2010).

## HONORARIOS POR TEMERIDAD

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, autoriza a los tribunales a ordenar en la sentencia, el pago de honorarios por temeridad. La sanción procede contra el abogado o la parte perdidosa que actuó con temeridad o frivolidad. El objetivo de la sanción es disuadir la litigación frívola, compensar a la parte que no ha sido temeraria por los gastos incurridos y fomentar las transacciones. El concepto de temeridad no está definido en las Reglas de Procedimiento Civil. El Tribunal Supremo de Puerto Rico ha delimitado sus contornos. El concepto temeridad es amplio e incluye las actuaciones de un litigante que: (1) ocasionan un pleito que pudo evitarse, (2) prolongan indebidamente el trámite judicial u

(3) obligan a la otra parte a gastos innecesarios para hacer valer sus derechos. Un litigante perdidoso es temerario cuando, su terquedad, testarudez, obstinación, contumacia, empecinamiento, impertinencia e insistencia en una actitud desprovista, obliga a la otra parte innecesariamente a las molestias, gastos e inconvenientes de un pleito. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 145-148.

La facultad de imponer honorarios de abogado y de determinar su procedencia es la mejor arma que tienen los tribunales para gestionar eficientemente los procedimientos judiciales y la administración de la justicia. Igualmente, es la mejor arma para proteger a los litigantes de la dilación y gastos innecesarios. La parte que insiste contumazmente en alegar algo sin prueba fehaciente, que niega hechos que le constan o que son de fácil corroboración y que dilata los procesos judiciales para no responder por sus obligaciones es temeraria. Además, es temerario el que niega totalmente su responsabilidad por los hechos que motivan la demanda. *SLG González-Figueroa v. SLG et al.,* supra*, pág. 150. La imposición de honorarios de abogado por temeridad descansa en la sana discreción judicial que solo será variada en apelación, cuando se demuestra un abuso de discreción. *SLG González-Figueroa v. SLG et al.,* supra, pág. 150.

### III

La apelante alega en el primer y segundo señalamiento de error que el TPI aplicó incorrectamente la presunción de ganancialidad establecida en *Banco Bilbao Vizcaya v. López Montes,* supra*, y el estándar para evaluar una sentencia sumaria por insuficiencia de la prueba. Según la apelante, la presunción no se activó porque no se configuró el hecho base de la cotitularidad de la cuenta embargada. La apelante argumenta que en ninguna parte de la sentencia ni de la moción de sentencia sumaria surge que el Sr.

Acevedo era titular de sus cuentas y esa es la misma razón por la que alega que no procede dictar sentencia sumaria por insuficiencia de la prueba. La señora Cancel plantea que la Cooperativa, como promovente de la sentencia sumaria, tenía el peso de probar que no cuenta con prueba para derrotar la presunción y probar su caso.

La apelada sostiene que probó a cabalidad que no existe controversia sobre la improcedencia de la causa de acción en su contra por embargo ilegal. La Cooperativa aduce que evidenció la cotitularidad porque demostró que la apelante mezcló su dinero con el de su esposo. La apelada alega que es un hecho que la apelante y su esposo actuaron como una comunidad de bienes, pero la señora Cancel optó por no comparecer para derrotar la presunción de cotitularidad.

Los errores señalados se reducen a determinar, si procede la desestimación sumaria de la demanda contra la apelada. El foro apelado no erró al dictar sentencia sumaria a favor de la apelada. La sentencia sumaria procede por cualquier modalidad, porque no existe controversia de hechos esenciales y el derecho favorece la adjudicación sumaria. La Cooperativa demostró que una vista en sus méritos era innecesaria, porque la apelante no cuenta con la evidencia necesaria para probar su caso y controvertir los hechos probados.

Las partes tuvieron la oportunidad de realizar un adecuado descubrimiento de prueba por insuficiencia de la prueba. Según consta en la sentencia apelada, el descubrimiento de prueba finalizó el 26 de otubre de 2022. La Cooperativa presentó la solicitud de sentencia sumaria el 22 de noviembre de 2022 y acompañó robusta prueba documental en apoyo a su petición. El TPI dio oportunidad a la apelante para expresar su oposición a la moción de sentencia sumaria. El 30 de noviembre de 2022 le concedió 20 días para expresarse. El 16 de diciembre de 2022 autorizó extender el término

hasta el 30 de diciembre de 2022. No obstante, la apelante optó por no oponerse y no expresó justa causa para no hacerlo e incumplir las órdenes del tribunal. Aun así, no es hasta el 12 de enero de 2023 que el TPI decide dar por sometida la solicitud de sentencia sumaria.

El TPI no estaba obligado a realizar una vista, porque la Cooperativa probó que actuó conforme a lo pactado con la apelante y en cumplimiento con una orden del tribunal y que los actos de la apelante ocasionaron el embargo de sus cuentas.

La apelante admitió que leyó todos los términos y condiciones de los contratos que suscribió con la Cooperativa. Véase, pág. 248 del apéndice. Su admisión demuestra su conocimiento de todos los acuerdos suscritos. El expediente incluye copia de los contratos de las cuentas de la apelante en la Cooperativa. Véase, págs. 398-406. El documento en el que la apelante autorizó a su esposo a hacer transacciones en la cuenta 51714, también forman parte del expediente. Véase, pág. 409 del apéndice.

Las cuentas de ahorro y cheque de la apelante tienen como denominador común la inclusión de las cláusulas siguientes:

(1) El depositante acuerda que solo podrán efectuar transacciones en la Cuenta aquellas personas cuyas firmas están debidamente registradas en los documentos y/o formularios correspondientes.

(2) <u>Persona es aquel cuyo nombre aparece al final de este o cuyo nombre y firma aparezca en aquellos contratos y/o documentos que de tiempo en tiempo el depositante suscriba.</u>

(3) Toda persona autorizada estará facultada a endosar para depositar a la cuenta del depositante, efectuar retiro, depositar para acreditar a la cuenta de cheques y otros instrumentos y a ejercer las facultades y derechos de un depositante en cuenta conjunta, según lo expuesto en el contrato.

Todas las cuentas de la apelante, entiéndase, ahorros, acciones y cheques incluyen las cláusulas siguientes.

1. La cuenta estará sujeta a la legislación y reglamentos aplicables, así como a los reglamentos de la Cooperativa que estén en vigor de tiempo en tiempo y a aquellos que se adopten en el futuro.

2. La Cooperativa estará autorizada a debitar contra la Cuenta cualquier suma de dinero que el depositante le adeude por concepto de préstamos y a ejercer sin previo aviso el derecho de compensación.

3. Las acciones de capital, depósitos y demás haberes de los socios o depositantes en la Cooperativa quedarán grabadas hasta el límite de la deuda que tengan, si alguna, con la Cooperativa.

4. La Cooperativa no responde por transacciones que no puedan completarse porque los fondos están sujetos a reclamaciones judiciales o restricciones similares.

5. El depositante acuerda y reconoce que, ante el diligenciamiento de una orden o requerimiento de embargo de un tribunal o autoridad competente, la Cooperativa congelará y/o entregará los fondos disponibles en las cuentas al momento del diligenciamiento. No obstante, esos fondos, no incluirán los gravados por una deuda con la Cooperativa existente al momento del diligenciamiento. La congelación y entrega de los fondos se llevarán a cabo, según los términos de la orden o requerimiento de embargo, sin necesidad de emitir notificación previa al deponente.

6. La Cooperativa no tendrá obligación alguna de impugnar, controvertir o cuestionar los términos de una orden o requerimiento de embargo o de alegar cualquier defensa que el socio pudiera tener frente a su promovente.

La apelante admitió la existencia de dichas cláusulas en sus cuentas y que conforme a lo pactado: (1)autorizó a su esposo a endosar para depositar a la cuenta, a efectuar retiros, retirar para acreditar a la cuenta de cheques y otros instrumentos y a ejercer todas las facultades y derechos de un depositante en una cuenta conjunta, (2) la Cooperativa podía debitar de su cuenta cualquier cantidad adeudada por concepto de un préstamo, (3) consintió a que la Cooperativa ejerciera el derecho a compensación sobre sus cuentas sin aviso previo, por cualquier deuda, préstamo, sobregiro y cualquier otra obligación del depositante y cualesquiera de las personas autorizadas, (4) la Cooperativa congelara y entregara los fondos disponibles en la cuenta al momento del diligenciamiento de una orden de embargo con exclusión de los grabados por la propia Cooperativa en ese momento, (5) la Cooperativa no estará obligada

a impugnar, controvertir o cuestionar los términos del embargo o de alegar cualquier defensa del depositante frente al promovente. Véase, págs. 251-254 del apéndice.

La señora Cancel Morales aceptó que se comprometió a conducirse de conformidad con las disposiciones y términos del contrato. Véase, pág. 258 del apéndice. La apelante reconoció que pactó que: (1) las acciones de capital, depósitos y demás haberes, no estarían sujetos a embargo para satisfacer una deuda distinta contraída con la Cooperativa hasta el monto de la obligación con esta al momento de dictada la sentencia, (2) como titular de la cuenta, acordó y reconoció que la Cooperativa tenía la facultad de congelar y/o entregar los fondos disponibles al momento del diligenciamiento de una orden o requerimiento de embargo. Véase, pág. 257 del apéndice.

Por otro lado, la apelante aceptó que: (1) el 14 de junio de 2014 llenó un formulario en el que autorizó a su esposo a realizar transacciones en la cuenta número 41714, (2) solo podrán efectuar transacciones expedir o librar cheques aquellos cuyas firmas están registradas en los documentos y/o formularios correspondientes, (3) autorizó a la Cooperativa a debitar contra la cuenta cualquier suma de dinero que le adeude y (4) sus depósitos y demás haberes en la Cooperativa quedarían gravados hasta el límite de la deuda, si alguna, que mantenga con la Cooperativa. Véase, págs. 259-261 del apéndice.

La autorización de la apelante a su esposo para firmar y hacer transacciones en su cuenta es un hecho admitido. La apelante aceptó que autorizó a su esposo a firmar cheques, depositar y retirar. Véase, pág. 270 del apéndice. El 14 de junio de 2014 y 8 de enero de 2015, la apelante autorizó a su esposo en el formulario *Solicitud de Ingreso de Cuenta*. A través de ese documento, la apelante consintió a que su esposo depositara y retirara dinero,

endosara cheques para depositarlos en las cuentas, accediera a los balances de las cuentas y los estados bancarios y conociera los movimientos en las cuentas. La apelante consintió a que su esposo realizara todas esas transacciones, sin que ella estuviera presente. La facultad de su esposo no estaba limitada a las transacciones señaladas.

La apelante reconoció los acuerdos que suscribió con la Cooperativa. No obstante, cuestiona el embargo de sus cuentas porque está casada por el régimen de separación de bienes. Sin embargo, es un hecho incontrovertido que nunca lo notificó a la Cooperativa ni le presentó evidencia de las capitulaciones matrimoniales. La apelante reconoció que la Cooperativa desconocía ese hecho, porque nunca se lo informó. La señora Cancel Morales aceptó que nunca proveyó a la Cooperativa copia de las capitulaciones, no le notificó cuando se casó y no hizo ninguna anotación en los documentos oficiales de la Cooperativa, informando que estaba casada por capitulaciones. Véase, págs. 263-265 y 288 del apéndice. La señora Rosado Santiago declaró que la Cooperativa entendía que el matrimonio se constituyó por el régimen económico de sociedad legal de gananciales, debido a que la apelante nunca notificó ni evidenció que se casó por el régimen económico de capitulaciones matrimoniales. Véase, pág. 223 del apéndice. La empleada de la Cooperativa afirmó, en su declaración jurada, que los documentos que entregó el alguacil eran para embargar las cuentas de la Corporación Quesos del País, del señor Guadalupe Acevedo y la sociedad legal de gananciales. La señora Cancel explicó que las cuentas de la apelante se trataron como si fueran de la sociedad de bienes gananciales, debido a la ausencia de evidencia de capitulaciones matrimoniales. Véase, pág. 224 del apéndice.

El TPI aplicó correctamente la presunción establecida en *BBVA v. SLG López, Sasso,* supra. La Cooperativa probó que la

apelante y su esposo actuaron como cotitulares de las cuentas. La apelante no refutó la presunción establecida por la Cooperativa mediante hechos específicos, ya que optó por no oponerse a la moción de sumaria. No obstante, aduce que la Cooperativa congeló y entregó al alguacil dinero de sus cuentas, a sabiendas de que esos fondos no pertenecían a su esposo. Sin embargo, sus actuaciones y las de su esposo demostraron que el dinero depositado en las cuentas de la Cooperativa era de ambos. Su comportamiento fue muy distinto al de una pareja que está casada bajo el régimen de separación de bienes. A nuestro juicio, esa conducta le hizo creer a la apelada que el dinero en la cuenta era de ambos y le impidió distinguir si los fondos pertenecían a la apelante, a su esposo o la corporación. La apelante admitió que: (1) autorizó a su esposo a firmar para que fuera a la Cooperativa, cuando ella no podía, (2) su esposo depositaba el dinero para el pago del agua, la luz y la compra, (3) que el dinero en la cuenta podía ser de ella o de su esposo, (4) no presenciaba cuando su esposo hacía los depósitos y (5) no podía dar fe de la procedencia de todos los depósitos que hizo su esposo. Véase, págs. 270-274 del apéndice.

Aunque la apelante negó que en sus cuentas se depositaba dinero del negocio de quesos, Adianez M. Rosado Santiago declaró que el 30 de junio de 2016 retiró cinco mil dólares ($5,000.00) de su cuenta y los depositó en la de la Corporación Quesos del País La Esperanza. Véase, pág. 222 del apéndice. La declaración jurada de la señora Adianez M. Rosado Santiago también confirma, lo ya admitido por la apelante. La Secretaria Ejecutiva y representante de Recursos Humanos de la apelada declaró que los días 14 de junio y 8 de enero de 2015, la apelante cumplimentó el Formulario *Solicitud de Ingreso de Cuenta*, mediante el que autorizó a su esposo como firmante y a realizar las transacciones ya señalada en sus cuentas. Véase, pág. 222 del apéndice. La señora Rosado Santiago explicó

que la Cooperativa no entregó las acciones, porque estaban garantizando un préstamo y que las congeló, conforme a lo pactado. La empleada advirtió que la Cooperativa no podía cuestionar el embargo, porque así se pactó en los contratos suscritos con la apelante.

La apelante admitió que: (1) se enteró de la demanda contra su esposo en el año 2016, cuando llegó la carta; (2) se enteró del embargo, porque para esa fecha era supervisora de la empresa de quesos que también estaba demanda y que (3) no hizo ninguna gestión en la Cooperativa para informar la existencia de ese pleito. Véase, págs. 277-279 y 287 del apéndice. Aunque el TPI ordenó a la unidad de cuentas la devolución a la apelante la cantidad embargada y a la Cooperativa descongelar las acciones, esa orden obedeció a que nunca fue emplazada. Véase, pág. 395 del apéndice. El tribunal no hizo un análisis ni una determinación en sus méritos sobre la procedencia del embargo de las cuentas de la apelante.

La Cooperativa probó que no existe controversia de que: (1) la apelante autorizó a su esposo a hacer transacciones en su cuenta, (2) en las cuentas había depositado dinero de ambos, (3) nunca informó a la Cooperativa que estaba casada por el régimen económico de separación de bienes, (4) la apelante y su esposo se comportaron como una comunidad de bienes, (5) la apelante asintió a que la Cooperativa congelara y entregara los fondos disponibles en la cuenta al momento de diligenciarse un embargo, a excepción de los grabados por la propia Cooperativa, (6) la apelante eximió a la Cooperativa de la responsabilidad de impugnar controvertir o cuestionar los términos del embargo o de alegar cualquier defensa del depósito y (7) la apelante no hizo ninguna gestión para que la Cooperativa adviniera en conocimiento del pleito contra su esposo y la sociedad legal de gananciales para evitar el embargo de sus fondos. Como cuestión de derecho procede la desestimación con

perjuicio de la demanda, porque los hechos esenciales que probó la Cooperativa la eximen de responsabilidad.

Por último, la apelante alega que el TPI erró al ordenarle el pago de tres mil quinientos dólares ($3,500.00) de honorarios, ya que sostiene que no fue temeraria. El tercer señalamiento de error se cometió. El TPI abusó de su discreción al ordenar a la apelante el pago de honorarios en una decisión que no está fundamentada. El foro apelado se limitó a ordenarle el pago de $3,500.00 de honorarios. No obstante, la sentencia no incluye determinaciones de hecho que demuestren su temeridad, la procedencia de honorarios y la razonabilidad de la cantidad impuesta. La sentencia apelada tampoco incluye el derecho sobre esa materia. Su parte dispositiva está huérfana de una discusión fundamenta en la que el TPI explique, porque la apelante fue temeraria. La ausencia de determinaciones de hechos y de una discusión fundamentada sobre la temeridad de la apelante, nos obliga a dejar sin efecto la imposición del pago de honorarios en su contra.

**IV**

Por los fundamentos antes expuestos se revoca la sentencia apelada, únicamente para dejar sin efecto el pago de honorarios de abogado, en todo lo demás, se confirma.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones