Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
**PANEL XII**

| PASEO CARIBE PARKING, LLC Y OTROS<br><br>Apelante<br>v.<br><br>CONSEJO DE TITULARES DEL CONDOMINIO BAHÍA PLAZA<br><br>Apelado | KLAN202400817 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2022CV03814 (SALÓN 908)<br><br>Sobre: COBRO DE DINERO ORDINARIO Y OTROS |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de noviembre de 2024.

El apelante, Paseo Caribe Commercial, LLC (PCC), solicita que revoquemos la Sentencia Sumaria Parcial que el Tribunal de Primera Instancia dictó a favor del Consejo de Titulares del Condominio Bahía Plaza.

El apelado, Consejo de Titulares del Condominio Bahía Plaza, presentó su oposición al recurso.

**I.**

El apelante presentó una demanda contra el apelado por incumplimiento de contrato en la que alegó lo siguiente. PCC adquirió la titularidad del centro comercial ubicado en el Condominio Bahía Plaza. El edificio está sujeto al Régimen de Propiedad Horizontal. El Consejo de Titulares se niega a pagar el combustible de la torre de enfriamiento que sirve a ambas partes y que fue constituida como una servidumbre en la Escritura Matriz. El apelado está obligado a contribuir con esos gastos, conforme a lo establecido en el Artículo Séptimo, Secciones Uno y Tres (g) de la Escritura Matriz.

El apelado reconoció que la torre de enfriamiento sirve a varias áreas del edificio. No obstante, adujo que la antecesora del apelante nunca le impuso ese cargo, cuestionó el procedimiento utilizado para estimar los gastos, y alegó que la deuda no estaba vencida y no era líquida ni exigible.

PCC pidió una sentencia sumaria que reconozca su derecho a recobrar del Consejo de Titulares la proporción de los gastos que le corresponde pagar por el consumo energético de las torres de enfriamiento. El apelante alegó que el apelado se beneficia, porque la torre de enfriamiento sirve a los aires acondicionados del gimnasio, las oficinas administrativas y el recibidor de Bahía Plaza. PCC argumentó que la Ley de Propiedad Horizontal obliga a los titulares a pagar proporcionalmente los gastos de los elementos comunes. Según el apelante, los locales donde están instalados los servicios centrales como la electricidad y la refrigeración son elementos comunes conforme a la ley.

El apelante reconoció que el Artículo Séptimo, Sección Cuatro (e) de La Escritura Matriz lo obliga a pagar por el uso, instalación, operación, mantenimiento, reparación y reemplazo de las servidumbres que benefician exclusivamente al centro comercial. No obstante, argumentó que la torre de enfriamiento beneficia a ambas partes y en la Escritura Matriz no se contempló quién pagaría los gastos de ese tipo de servidumbre. El apelante alegó que la controversia tiene que resolverse conforme al Código Civil, donde se establece que el titular del predio sirviente que se beneficia de una servidumbre está obligado a contribuir con los gastos que ese gravamen conlleva. Además, invocó las disposiciones de la Ley de Condominios que clasifican como elementos comunes a los locales donde ubican los servicios de electricidad y refrigeración y que obligan a los titulares a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos

comunes generales. Por último, argumentó que exonerar a la apelada del pago del combustible de una servidumbre de la que se beneficia viabiliza un enriquecimiento injusto.

El Consejo de Titulares se opuso a la petición de sentencia sumaria de la apelante y solicitó sentencia sumaria a su favor. Según el apelado, la controversia se redujo a determinar, si está obligado a pagar el costo de la energía eléctrica utilizada para poner en función la torre de enfriamiento, a pesar de que en la Escritura Matriz se responsabilizó al apelante del pago de las utilidades de las servidumbres no exclusivas. El apelado adujo que el apelante no alegó en la demanda la aplicación del Artículo Séptimo, Sección Cuatro (e) de La Escritura Matriz y que lo hizo por primera vez en la moción de sentencia sumaria. No obstante, el Consejo citó esa sección para su beneficio. El Consejo de Titulares adujo que el titular del centro comercial se responsabilizó en esa sección, del pago de los gastos de administración, mantenimiento y reemplazo de las áreas gravadas por las servidumbres no exclusivas. Según el apelado, eso incluye la energía eléctrica de la torre de enfriamiento.

El apelado sostuvo que el apelante no podía invocar la Ley de Condominios, porque sus disposiciones solo aplican a los titulares que se han sometido al régimen de propiedad horizontal mediante escritura pública. Finalmente, negó la aplicación de la defensa de enriquecimiento injusto, porque la obligación cuyo cumplimiento reclama se constituyó en la Escritura Matriz.

Ambas partes presentaron escritos en apoyo a sus respectivas posiciones. El apelante argumentó que el apelado admitió que se beneficia de la torre de enfriamiento, que depende de su uso y no pudo derrotar que la Escritura Matriz no contempla la controversia planteada. Por último, adujo que la Escritura Matriz establece que las servidumbres son elementos comunes cuyos gastos deben ser satisfechos por los titulares del condominio. Por su parte, el Consejo

argumentó que la escritura matriz establece expresamente quién responde por los gastos de las áreas en las que están localizadas las servidumbres no exclusivas. El apelado alegó que el apelante se obligó a pagar todos los costos relacionados con las servidumbres no exclusivas, porque aceptó y adquirió el centro comercial con todas las cargas, gravámenes y condiciones establecidas en la escritura matriz.

El TPI dictó sentencia sumaria parcial a favor del Consejo de Titulares y declaró No Ha Lugar la solicitud de sentencia sumaria parcial del apelante. Según el foro apelado, no existe controversia sobre los hechos siguientes:

1. El 3 de junio de 2015, el Condominio Bahía Plaza fue sometido al régimen de propiedad horizontal mediante la Escritura Matriz del protocolo del Notario Público Alfredo Álvarez Ibáñez.

2. El Condominio Bahía Plaza ubica sobre cierto derecho de superficie constituido en, inter alia, la finca 904.

3. La Escritura Matriz consta inscrita en el Registro de la Propiedad.

4. La Escritura Matriz dispone que se establecieron las siguientes transacciones:

--------------------------------STATE----------------------------
This Deed contains several real estate transactions which are described in full detail below and, for easier reference, are briefly summarized as follows: (a) Certification of Completion of Construction of the Bahia Plaza Building (as hereinafter defined), a nine (9) level structure or building, including a basement level, [...] which Bahia Plaza Building is valued herein in the amount of FIFTYSEVEN MILLION EIGHT HUNDRED TWENTY-TWO THOUSAND SEVEN HUNDRED THIRTY-ONE DOLLARS AND TEN CENTS ($57,822,731.10). (b) Constitution of the Retail Center Surface Right (as hereinafter defined), to be part of the Bahia Plaza Condominium, above and below the Retail Center (as hereinafter defined) and the distribution of the mortgage credit constituted originally over the Land (as hereinafter defined), such distribution of the mortgage credit to be made pursuant to Article One Hundred Seventy-Four (174) of the Puerto Rico Mortgage Law and in accordance with the Puerto Rico San Geronimo Caribe Project, Inc. v. Hon. Marisol Marchand, Registradora de la Propiedad, Two Thousand Thi Hundred Thirty-Eight (2013 T.S.P.R. 138); provided further, that each of CPG/GS and Developer, for

themselves and on behalf of their successors and assigns, expressly and unconditionally waive and relinquish any rights they have or may have in the future to any right of first refusal (tanteo), any right of redemption (retracto) and any accession rights (derechos de) as to (i) the Retail Center Surface Right and (ii) the Land and the Retail Center, respectively. The value assigned herein to the Retail Center Surface Right will be the sum of FORTY-FOUR MILLION SIX HUNDRED EIGHTY-FIVE THOUSAND DOLLARS ($44,685,000.00), which corresponds to the value of the assumed mortgage obligation encumbering this surface right after the corresponding distribution of the mortgage credit between the Land and the Retail Center Surface Right. ... (d) Constitution of several right of way and utilities easements (a total of eleven of these) for the benefit of the real properties and the surface rights described in items (b) and (c) above. Each easement is valued in the sum of ONE THOUSAND DOLLARS ($1,000.00), for a total of ELEVEN THOUSAND DOLLARS ($11,000.00).

5. La Escritura Matriz establece en el Art. Séptimo, Sección Cuatro (a) lo relacionado a las Servidumbres del Edificio del Condominio:

Four. The Condominium Building Utilities Easements. (a) Utilities. The Developer hereby constitutes on: (i) certain portions of the roof of the Condominium Building; and (ii) the entire ceiling of the portion below ground of the Retail Center Surface Right an irrevocable, perpetual, and nonexclusive predial easement ("servidumbre predial"), to the fullest extent permitted by law, in favor of the Retail Center and the Land for the benefit of CPG/GS or any future owner or owners of the Retail Center for the use, installation, operation, maintenance, repair and replacement of sanitary sewer lines, potable water pipes, storm sewer pipes, power lines, cable t.v. and telephone lines, and any other pipe, line, pipeline and/or infrastructure equipment relative to Retail Center's fire extinguishing system and/or any public or private utility that serves the Retail Center. The areas encumbered by this easement are shown graphically on sheets number "SR" dash one (SR-1) and "SR" dash four (SR4) of the Plans.

6. La Escritura Matriz establece en el Art. Séptimo, Sección Cuatro (e) lo siguiente:

(e) The easements constituted through subsections (a) through (d) of this clause "Four" will encumber the Condominium Property, as servient parcel, in favor of the Retail Center and the Land, as dominant parcel. CPG/GS and its successors and assigns will be responsible and will pay for all expenses related to the use, installation, operation, maintenance, repair and replacement of: (i) the areas encumbered by such easements and that are exclusive, and (ii) the lines, pipelines, pumps, cisterns, and any other equipment that serves exclusively the Retail Center and the Land, even if they are located in areas encumbered

by such easements and that are non-exclusive. CPG/GS and its successors and assigns must include in the Retail Center's annual budget an item indicating the estimated costs connected with the management, maintenance, repair, and replacement of such areas and equipment. The Developer (or the Council of Unit Owners of the Regime, upon the individualization and sale of the first apartment unit thereof) shall be entitled to pursue any remedy available under the law (including, without limitation, the remedy of injunction and of specific performance) in the event that CPG/GS and its successors and assigns fail to comply with its obligation under this subsection. CPG/GS and its successors and assigns will be responsible for and pay the administration, maintenance, and replacement expenses of the areas encumbered by the non-exclusive easements constituted by this clause.

7. La Escritura Matriz establece en el Art. Duodécimo la descripción de los elementos comunes generales del Régimen de propiedad horizontal del Condominio Bahía Plaza.

---TWELFTH: DESCRIPTION AND TERMS AND CONDITIONS OF THE REGIME. – ...

-Four: Description of the General Common Elements. The General Common Elements of the Regime subject of this Master Deed are and include, without limitation, the following:

(a) The Retail Center Surface Right and the Laguna Property Surface Right on which the Condominium Building and access roadways to one hundred thirteen (113) parking spaces are located (as described above) and the Parking Building Surface Right where access roadways to ninety-nine (99) parking spaces are located (as described above), which shall also include, but not be limited to, security gates, security barriers and fences, and any construction or improvements thereon for the benefit of the Regime and the Owners.

. . .

(h) All walkways, gardens, water cisterns, emergency power plants, all central utility installations of power, light, telephone, water, sewage, garbage stations, commercial television facilities, and the like, existing for common use and all other elements located in the Condominium Building or on, above or below the Retail Center Surface Right, the Parking Building Surface Right and the Laguna Property Surface Right, as well as the easements described in paragraph SEVENTH of this Deed, of common use or necessary for its existence, upkeep and safety.

8. El Artículo Duodécimo, Sección Diecisiete de la Escritura Matriz establece lo siguiente:

TWELFTH: DESCRIPTION AND TERMS AND CONDITIONS OF THE REGIME.

Seventeen: Common Expenses. Each Unit Owner shall be required to contribute to the payment of CommonExpenses relating to the Operation of the Regime, the General Common Elements and the Limited Common Elements which serves such Unit Owner's Unit(s) in proportion to the percentage share ownership corresponding to such Unit(s) in the Common Elements (general and limited) of the Regime....

Common Expenses shall include:
...
(b) Expenses incurred in the day to day Operation of the Regime, including salaries and benefits of all employees of the Regime, the cost of materials, supplies and services purchased by the Regime, utility services for the Common Elements.

9. La Torre de enfriamiento sirve a áreas del Centro Comercial (Retail Center) y áreas del Condominio Bahía Plaza.

10. La Torre de enfriamiento se encuentra ubicada en el techo de Bahía Plaza.

11. El 26 de febrero de 2020, CPG vendió a PCC las fincas números 904 y 1,083 de Puerta de Tierra, Registro de la Propiedad de Puerto Rico, Sección I de San Juan por medio de la Escritura Núm. Tres (3) de Deed of Purchase and Sale (Escritura de Compraventa) del protocolo del Notario Público Gilberto Gutiérrez Teissonniere.

12. En la Escritura de Compraventa, CPG como Seller o vendedor y PCC como Purchaser B o comprador B, acordaron que las propiedades, entre ellas, el Retail Property se vendía por el Seller, CPG, y se adquiría por el Purchaser B, PCC, bajo los términos y condiciones "As-Is, Where-Is" Sale.

El foro primario redujo las controversias a determinar si:

(1) el Consejo de Titulares es responsable del pago proporcional del consumo de energía eléctrica de la torre de enfriamiento ubicada en el techo del Condominio Bahía Plaza.

(2) procede desestimar la demanda en su contra por incumplir con el pago de los gastos de consumo energético de la torre de enfriamiento.

Al TPI le quedó claro que la torre de enfriamiento beneficia a ambas partes, porque sirve a áreas del Centro Comercial y del Condominio Bahía Plaza. No obstante, desestimó la demanda, porque responsabilizó al apelante por el pago del consumo energético de la torre y exoneró de esa responsabilidad al apelado. El TPI fundamentó su decisión en la interpretación que hizo del

Artículo Séptimo, Sección Cuatro (e) de la Escritura Matriz, donde se establecieron los gastos de las servidumbres no exclusivas.

El foro primario llegó a las conclusiones siguientes. Según consta en la Escritura Matriz sobre el techo del Condominio y de la porción subterránea del Centro Comercial se constituyó una servidumbre irrevocable, perpetua y no exclusiva a favor del Centro Comercial, de CPG GS y de cualquier propietario futuro, como lo es el apelante. La servidumbre se hizo a favor del Centro Comercial para el uso, instalación, operación, mantenimiento, reparación y reposición de alcantarillado sanitario, líneas tuberías de agua potable, tuberías de alcantarillado pluvial, líneas, cable tv y líneas telefónicas y cualquier otra tubería, líneas, ductos y/o equipos de infraestructura y/o cualquier servicio público o privado que sirva al Centro Comercial. Dicho artículo obligó al Centro Comercial y sus sucesores a pagar los gastos de administración, mantenimiento y reposición de las áreas gravadas por las servidumbres no exclusivas constituidas en los incisos (a) (d). PCC es el titular del centro comercial y como tal responde por el pago del consumo energético de la torre de enfriamiento.

El foro apelado no acogió los argumentos de que el consumo energético de la torre de enfriamiento no forma parte de los gastos de administración que PCC reconoció estaba obligado a sufragar en las servidumbres compartidas. El TPI rechazó que los gastos de administración estuvieran limitados a los requeridos para contrarrestar los efectos de la duración o transcurso del tiempo en el valor de las cosas y a los que son para salvar el valor presente de una cosa sin comprometerse para el futuro. El foro primario determinó que los gastos de consumo de energía forman parte de la definición de gastos de administración. Según el TPI, los derechos otorgados al Centro Comercial para el uso, instalación, operación, mantenimiento, reparación y reposición acarrean el pago de los

gastos que eso conlleva. Por esa razón, resolvió que el consumo energético para el uso de la torre de enfriamiento es un acto de administración que el titular del centro comercial tiene que pagar. El TPI determinó que la apelante adquirió la propiedad del centro comercial *as is where is sale* y como tal se obligó a sufragar los gastos de administración, mantenimiento y reemplazo de acuerdo con el Artículo Séptimo, Sección 4 (e). Por último, rechazó la aplicación de la doctrina de enriquecimiento injusto, debido a que prevalecen los acuerdos contenidos en la Escritura Matriz sobre quién paga los gastos relacionados a las servidumbres prediales. El apelante pidió reconsideración y el TPI la denegó.

PCC presentó este recurso en el que alega que:

Erró el TPI al determinar que, en virtud de la Escritura Matriz, Bahía Plaza no viene obligada a sufragar los "gastos por uso" en concepto de consumo energético en los que incurre al servirse de las Torres de Enfriamiento.

Erró el TPI al determinar que ante el silencio de la Escritura Matriz sobre los "gastos por uso" relativos a las servidumbres exclusivas, los "gastos de administración" incluyen los "gastos de uso".

Erró el TPI al pasar por alto que la Escritura Matriz cataloga las Torres de Enfriamiento como un elemento común general sobre el cual Bahía Plaza viene obligada a aportar proporcionalmente a su uso en concepto de consumo energético que ejerce.

Erró el TPI al determinar que en el caso de autos no se configuran los elementos de la doctrina de enriquecimiento injusto.

**II.**

**A.**

**Moción de Sentencia Sumaria**

Nuestro ordenamiento procesal civil reconoce el uso y valor que tiene la sentencia sumaria para asegurar una solución justa, rápida y económica de los casos. La herramienta procesal de la sentencia sumaria posibilita la pronta resolución de una controversia, cuando no es necesario celebrar un juicio en su fondo.

No obstante, para que proceda es necesario que, de los documentos no controvertidos, surja que no hay controversia real y sustancial sobre los hechos materiales del caso. Un hecho material es aquel que puede afectar el resultado de la reclamación, de acuerdo con el derecho sustantivo aplicable. La controversia sobre los hechos materiales tiene que ser real. Cualquier duda es insuficiente para derrotar una moción de sentencia sumaria. La sentencia sumaria procede cuando no existe controversia de hechos materiales y únicamente resta aplicar el derecho. *Cruz, López v. Casa Bella y otros,* 2024 TSPR 47, 213 DPR ___ (2024); *Universal Ins. y otro v. ELA y otros,* 211 DPR 455, 471-472 (2023).

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, exige el cumplimiento de ciertos requisitos de forma para instar una moción de sentencia sumaria y su respectiva oposición. La parte que sostenga la inexistencia de una controversia sustancial de hechos esenciales y pertinentes debe presentar una moción que se funde en declaraciones juradas u otra evidencia admisible. Además, tanto la moción como la oposición deberán cumplir con lo establecido en la Regla 36.3, *supra.* La sentencia sumaria no puede dictarse cuando: (1) existen hechos esenciales controvertidos, (2) la demanda tiene alegaciones afirmativas que no han sido refutadas, (3) existe una controversia real sobre algún hecho esencial o material que surge de los propios documentos que acompañan la moción o (4) no procede como cuestión de derecho. *Universal Ins. y otro v. ELA y otros,* supra, pág. 472.

El Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar las solicitudes de sentencia sumaria. Al igual que el TPI tiene que regirse por la Regla 36, *supra*, y aplicar los criterios que esa regla y su jurisprudencia interpretativa exigen. Ambos foros tienen que revisar que la moción de sentencia sumaria y su oposición cumplan

los requisitos de forma codificados en la Regla 36, *supra.* El Tribunal de Apelaciones no podrá considerar evidencia que las partes no presentaron en el Tribunal de Primera Instancia. Este foro tampoco podrá adjudicar los hechos materiales en controversia, porque esa es una tarea que el Tribunal de Primera Instancia tiene que hacer, luego de realizar un juicio en su fondo. La revisión que hace el Tribunal de Apelaciones es la de un juicio de novo. El foro apelativo debe examinar el expediente de la manera más favorable para la parte opositora a la moción de sentencia sumaria y hacer todas las inferencias permisibles a su favor. *Cruz, López v. Casa Bella y otros,* supra; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015).

Al revisar una sentencia sumaria, el Tribunal de Apelaciones tiene que evaluar si realmente existen hechos materiales en controversia. Cuando determina que existen hechos materiales en controversia debe exponer cuáles son. Además, tiene que determinar cuáles están incontrovertidos. Si encuentra que todos los hechos materiales están realmente incontrovertidos, procede que revise de novo, si el TPI aplicó correctamente el derecho. *Meléndez González et al. v. M. Cuebas,* supra, pág. 119.

**B.**

**Ley de Condominios**

Las disposiciones de la Ley Núm. 129-2020 rigen todo inmueble sometido al régimen de propiedad horizontal irrespectivamente de la fecha en que fue sometido a dicho régimen. *Con Tit. Centro Int'l Torre II v. PRCI,* 210 DPR 403, 414 (2022). La escritura en la que se establece el régimen de propiedad horizontal expresará de forma clara y precisa el destino y uso de toda área comprendida en el inmueble, excepto que la ley autorice lo contrario. Una vez fijado dicho destino y uso solo podrá ser variado mediante

la forma que expresamente establece la ley. Art. 4, 31 LPRA sec. 1921c.

El Tribunal Supremo de Puerto Rico ha advertido consistentemente la relevancia de la escritura en la que se establece el orden de propiedad horizontal. Una vez se inscribe en el Registro de la Propiedad constituye una especie de acuerdo privado que gobierna a los condómines o titulares que se adhieren a su cumplimiento y que obliga a terceros. La escritura matriz forma un estado de derecho que ha de ser aceptado por los sucesivos titulares, a medida que adquieren sus apartamentos en el régimen. Los tribunales debemos acudir a sus disposiciones para dirimir cualquier conflicto, salvo que sus disposiciones sean contrarias a la moral o el orden público. *Bravman, González v. Consejo Titulares,* 183 DPR 827, 845 (2011).

La Ley de Condominios define los elementos comunes como aquellos que no son susceptibles de propiedad individual por los titulares y que están sujetos a la indivisión forzosa. Art. 3, 31 LPRA sec. 1921b(j). Los locales para la instalación de servicios centrales como electricidad, luz, gas, agua fría y caliente, refrigeración, cisternas, tanques y bombas de agua, y otros similares indispensables para el adecuado disfrute de los apartamentos son considerados elementos comunes. Art. 17, 31 LPRA sec. 1921p(3). Los titulares de los apartamentos están obligados a contribuir proporcionalmente a los gastos para la administración, conservación y reparación de los elementos comunes generales. Art. 59, 31 LPRA sec. 1923(d).

### III.

El apelante discutió todos los errores señalados conjuntamente, debido a que están íntimamente relacionados. Según el apelante la controversia se reduce a determinar, si Bahía Plaza está obligada a pagar por el consumo eléctrico de la torre de

enfriamiento. El apelante aduce que el TPI erró al obligarlo a pagar la totalidad de los gastos por el uso de una servidumbre no exclusiva.

PCC sostiene que el foro apelado interpretó incorrectamente el Artículo Séptimo, Sección Cuatro (e) de la Escritura Matriz. Según el apelante: (1) solo está obligado a pagar los gastos de uso en el caso de las servidumbres exclusivas, (2) su responsabilidad está limitada al pago de la totalidad de los gastos de administración de las servidumbres no exclusivas, (3) no está obligado a pagar la totalidad de los gastos de uso de las servidumbres no exclusivas porque la escritura matriz guarda silencio al respecto, (4) responsabilizarlo por el pago de la energía eléctrica es contrario a la equidad y constituye un enriquecimiento injusto a favor del apelado que se beneficia de la torre de enfriamiento.

Según el apelante, la torre de enfriamiento es un elemento común conforme al Artículo 12, Sección Cuarta de la Escritura Matriz y Bahía Plaza tiene que contribuir proporcionalmente al pago de los gastos de las utilidades para la operación diaria de los elementos comunes generales. Igualmente, argumenta que, tanto en el actual como en el derogado Código Civil, el titular del predio sirviente que se beneficia de una servidumbre tiene que contribuir proporcionalmente con los gastos que ese gravamen conlleva.

El apelado sostiene que Ley de Condominios solo aplica a los titulares y el apelante es un tercero que no puede invocarla y que el Código Civil tampoco aplica, porque prevalece la Escritura Matriz. Por último, aduce que no existe enriquecimiento injusto, porque los titulares asintieron a la existencia de comercios en el edificio y, a cambio, el apelante asumió el pago de todos los gastos de uso de las servidumbres no exclusivas.

La controversia se reduce a determinar si el Consejo de Titulares está obligado a contribuir de forma proporcional con el

pago de los gastos de energía eléctrica que son necesarios para poner en uso la torre de enfriamiento.

El TPI excluyó de responsabilidad al Consejo, porque interpretó que el costo del consumo de energía es parte de los gastos de administración que el Centro Comercial se obligó a sufragar en su totalidad.

La contestación a la controversia está en el Artículo Séptimo, Sección Cuatro (e) de la Escritura Matriz. Su texto es el siguiente:

> -------(e) The easements constituted through subsections (a) through (d) of this clause "Four" will encumber the Condominium Property, as servient parcel, in favor of the Retail Center and the Land, as dominant parcel. CPG/GS and its successors and assigns will be responsible and will pay for all expenses related to the use, installation, operation, maintenance, repair and replacement of: (i) the areas encumbered by such easements and that are exclusive, and (ii) the lines, pipelines, pumps, cisterns, and any other equipment that serves exclusively the Retail Center and the Land, even if they are located in areas encumbered by such easements and that are non-exclusive. CPG/GS and its successors and assigns must include in the Retail Center's annual budget an item indicating the estimated costs connected with the management, maintenance, repair, and replacement of such areas and equipment. The Developer (or the Council of Unit Owners of the Regime, upon the individualization and sale of the first apartment unit thereof) shall be entitled to pursue any remedy available under the law (including, without limitation, the remedy of injunction and of specific performance) in the event that CPG/GS and its successors and assigns fail to comply with its obligation under this subsection. CPG/GS and its successors and assigns will be responsible for and pay the administration, maintenance, and replacement expenses of the areas encumbered by the non-exclusive easements constituted by this clause.

El Artículo citado se traduce al español como sigue:

> Las servidumbres constituidas a través de las subsecciones (a) a (d) de esta cláusula cuarta gravarán la propiedad del condominio como parcela sirviente a favor del Centro Comercial y de la tierra como parcela dominante. CPG/GS y sus sucesores y cesionarios serán responsables y pagarán por todos los gastos relacionados al uso, instalación, operación, mantenimiento, reparación y reemplazo de: (i) las áreas gravadas por dicha servidumbre que son exclusivas, y (ii) las líneas, tuberías, bombas, cisternas y cualquier otro equipo que sirva exclusivamente al Centro Comercial y su terreno, aunque estén ubicadas en áreas gravadas por dichas servidumbres y que no sean

exclusivas. CPG/GS y sus sucesores deberán incluir en el presupuesto anual del Centro Comercial una partida con los costos estimados relacionados al manejo, mantenimiento, reparación y reemplazo de dichas áreas y equipo. El Desarrollador (o el Consejo de Titulares del Régimen, al individualizar y vender la primera propiedad del mismo) tendrá derecho a interponer cualquier recurso disponible en ley (incluido, entre otros, el recurso de cese y desista) en caso de que CPG/GS, sus sucesores y cesionarios no cumplan con su obligación bajo esta subsección. CPG/GS sus sucesores y cesionarios serán responsables de pagar los gastos por la administración, mantenimiento y reemplazo de las áreas gravadas por las servidumbres no exclusivas constituidas bajo esta cláusula.

Una simple lectura del artículo de la Escritura Matriz citado es suficiente para adjudicar la controversia. Su texto es claro, porque establece expresamente que el apelante está obligado a pagar todos los gastos por el uso de las servidumbres exclusivas en beneficio del Centro Comercial. No obstante, en el caso de las servidumbres no exclusivas se omitió la palabra uso. Según lo dispuesto en la Escritura Matriz, CPG/GS sus sucesores y cesionarios pagarán los gastos por la administración, mantenimiento y reemplazo de las áreas gravadas por las servidumbres no exclusivas.

Nos queda más que claro que si la intención hubiese sido responsabilizar al apelante por el pago de los gastos de uso de las servidumbres no exclusivas, constaría expresamente en la Escritura Matriz, tal como consta en las exclusivas. A nuestro juicio, es más que razonable que ambas partes respondan por los gastos que son necesarios para el uso de las servidumbres no exclusivas, porque tanto el predio dominante como el sirviente se benefician del gravamen. El apelado argumenta que no existe enriquecimiento injusto, porque a cambio, los titulares permitieron la existencia de comercios en el edificio. Su argumento no nos convence, porque la existencia de comercios en el edificio es un activo y no una carga para los residentes y titulares.

La Escritura Matriz nos provee otros fundamentos para resolver que el apelado está obligado a contribuir proporcionalmente con el pago de los gastos de uso de las servidumbres no exclusivas. La Sección Cuarta del Artículo Doce incluye las servidumbres descritas en el párrafo siete como parte de los elementos comunes. Por su parte, la Sección Diecisiete de ese artículo responsabiliza a los propietarios de cada unidad a contribuir con el pago de los gastos comunes relacionados con la operación de los elementos comunes generales y de los limitados en la proporción que les corresponde. Los gastos comunes incluyen los incurridos en el día a día de la operación del régimen, incluyendo los servicios de utilidades para los elementos comunes.

El TPI erró al dictar sentencia sumaria parcial a favor de la apelada, debido a que interpretó incorrecta el Articulo Siete, Sección 4 e de la Escritura Matriz. La sentencia sumaria procede a favor del apelante, conforme a lo claramente establecido en la Escritura Matriz.

**IV.**

Por lo antes expuesto se revoca la sentencia sumaria parcial apelada y se dicta sentencia sumaria parcial a favor del apelante.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones